## Case No. 2,643.

### The CHESAPEAKE.

[5 Blatchf. 411.] [1]

Circuit Court, E. D. New York. June 10, 1867. [2]

COLLISION BETWEEN STEAMERS—HOLDING COURSE—BURDEN OF PROOF.

1. Where a steam ferry-boat was about one-third of the way across the East river, on a trip from New York to Brooklyn, when a steam propeller was coming down the river, and the propeller undertook to pass across the bows of the ferry-boat. and a collision ensued: *Held*, that the propeller was in fault for violating article 14 of the act of April 29, 1864 (13 Stat. 60), as the propeller had the ferry-boat on her own starboard side. and was bound to keep out of her way, while the latter was bound to keep her course.

2. This rule will, on all proper occasions, be steadily enforced, and, in case of a departure from it, followed by a collision, the onus will be on the offending vessel to show a clear and undoubted special case of excuse.

[Cited in The Garden City, 19 Fed. 532.]

This was a libel in rem, filed in the district court, by the owners of the steam ferry-boat Manhasset, against the steam propeller Chesapeake, to recover damages for a collision, which occurred in the East river, at about nine o'clock a. m. on the 2d of December, 1864. The district court—The Chesapeake [Case No. 2,642]—decreed for the libellants, and the claimants appealed to this court.

Benjamin D. Silliman, for libellants.
John E. Parsons, for claimants.

NELSON, Circuit Justice. The Manhasset came out of her slip at the foot of Catharine street, on the New York side, on her way across the river to her slip at the foot of Main street, on the Brooklyn side. The Chesapeake was coming down the middle of the river, laden with a company of soldiers, going to Fort Lafayette. The propeller was some distance up the river, when she saw the ferry-boat about one-third of the way across from the New York shore, and, instead of adopting measures to pass her stern, and permit her to keep her course, as she was entitled to by the settled rule of navigation under such circumstances. undertook to dictate the course she must pursue, so as to enable the former to pass on her left or across her bows. By the fourteenth article of the act of April 29, 1864 (13 Stat. 60), "if two ships, under steam. are crossing. so as to involve risk of collision, the ship which has the other on her own starboard side. shall keep out of the way of the other." This is a simple and plain rule. and must be observed. except under very special and urgent circumstances, in order to avoid the result of fault in case of collision. The correlative duty is also imposed on the other ship to keep her course. Special circumstances have been set up, in

this case, on the part of the propeller, to excuse a departure from the rule, namely, that two sailing vessels were in the way of a movement to pass the Manhasset under her stern. The weight of the proof is, that no such impediment existed; but, even if there had, it would have been easy for the propeller to slow and stop till the other vessel had passed, as the tide was hardly flood, which favored such a movement.

It is also insisted, on the part of the propeller, that, when she blew her two whistles, and the Manhasset slowed, if she had not again started on with speed, the collision would not have occurred, and that, in this movement, she was in fault. But the answer is, that this movement was in the moment of danger, and the pilot was influenced to make it, seeing the collision inevitable, in order to prevent a direct blow, and receive, as his vessel did, a glancing blow, so as to lessen the injury.

It is quite plain, on the proofs, that the collision, in the present case, occurred from ignorance, on the part of the master of the propeller, of the rule of navigation prescribed by the act of congress, or, if he was possessed of this knowledge, from a neglect to observe such rule, under circumstances to which it had a direct application; and, also, even in the absence of any such rule, in his mistaken movement, and persistence in it, to pass the Manhasset across her bows. The clear weight of the proofs is, that. if the propeller had kept her course down the river, no collision would have happened. I prefer, however, to place the decision upon her departure from the safe and fixed rule established by law, that, in the position the propeller held in relation to the other vessel, it was the duty of the latter to hold her course, and of the former to keep out of the way. It should be made known, that this rule will, on all proper occasions, be steadily enforced, and that, in case of a departure from it, followed by a collision, the onus will be on the offending vessel to show a clear and undoubted special case of excuse. No such excuse has been shown in the present instance, and, for this reason, the decree of the court below is affirmed.