## THE CORSICA.

1. Where two vessels, moving under steam, are crossing so as to involve a risk of collision, if the ship which has the other on her starboard does keep out of the way of the other, as a ship in that position is directed to do by the Rules of Navigation adopted by Congress, by the act of April 29th, 1864, and a collision occurs, from the other vessel's not having kept on her course—as under the said rules, it is impliedly her duty in such a state of movements to do—the obligation rests on this last vessel to show sufficient causes existing in the particular case which rendered a *devarture* from the rule necessary to avoid an immediate danger.

2. A steam vessel sailing in a harbor like that of New York, where there are vessels at anchor and in motion, is bound to move at no headway not entirely controllable.

APPEAL from the Circuit Court for the Southern District of New York, affirming a decree of the District Court of said district; in which latter court Samuel Schuyler, owner of the steamer America, had libelled the steam-propeller Corsica, one of the steamers of the Cunard line, for damages which his vessel had suffered by being, as he alleged, run into by the Corsica, in the harbor of New York. The collision occurred on the 9th of September, 1865, about midday; the weather having been clear, and the vessels for some time previously in plain sight of each other. The libelled vessel, the Corsica, laid the blame of the disaster wholly on the other steamer. The District Court decreed for the libellant; the Circuit Court affirmed that decree, condemning the Corsica in $33,000 damages and costs. Whereupon the owners of the Corsica appealed to this court.

*Mr. D. D. Lord, for the appellant; Mr. Van Sandvoord, contra.*

Mr. Justice BRADLEY stated the facts, and delivered the opinion of the court.

The pleadings and evidence in the case show that the Corsica, having just steamed out from her dock, preparatory to her outward passage, had turned her stem southwardly, and was proceeding, at a distance of about three or four hundred yards from the line of the Jersey City wharves, straight down the river towards the Narrows. The evidence as to her speed is contradictory. Her master says about five or six knots an hour; the master of the America says eight or nine knots, and the pilot, seven or eight miles. The chief engineer of the Corsica says she was gradually increasing her speed, and had got up to fifteen revolutions per minute; that at full speed she made twenty-five revolutions and ten knots an hour. Fifteen revolutions would therefore make about six knots, which is equivalent to seven miles an hour. A

number of vessels were at anchor on the westerly side of the
river, and some to the east; amongst others two ships nearly
opposite the Battery, one a little southerly of the other.
Whilst the Corsica was thus starting on her course, the
America came around the Battery from the East River, at a
speed of about six miles an hour, passed between the two
ships above mentioned, and directed her course across the
river in a diagonal line, making for her wharf in Jersey City,
**where she was accustomed to take in coal and water.** Her

**course** lay across that of the Corsica, and the men on the
two vessels each saw the approach of the other when they
were about four hundred or five hundred yards apart. From
the course the vessels were respectively pursuing, the one
**southerly,** nearly in line with the river, and the other north-

westerly, in a diagonal line, the Corsica was off the starboard bow of the America, and the latter was off the larboard bow of the Corsica.    Both being steamers, and standing on an equal footing, they were subject to the following rule, adopted by Congress in the act of April 29th, 1864 :*

"If two ships under steam are crossing so as to involve risk of collision, the ship which has the other on her own starboard side shall keep out of the way of the other."

This rule made it the duty of the America to keep out of the way of the Corsica; and, by implication, the corresponding and reciprocal duty of the Corsica to keep on her course. It can hardly be doubted from the evidence, taken together, that had the Corsica kept on her course, the collision would not have occurred.    The diagrams furnished by the counsel for the appellants render this fact very clear and demonstrable.    But, instead of doing this, the persons in charge of the Corsica, just before the collision occurred, ordered her helm hard a-starboard, and thus turned her right upon the America, which, as in duty bound, was backing out of her way. It is so apparent that this was the immediate cause of the disaster that it casts the burden of proof upon the appellants to show a sufficient cause in the conduct of the America to justify such a sudden change of course.    We have carefully examined the testimony to see if anything of the kind was elicited, and have failed to find it.    It is admitted by the pilot of the America that his first intention was to pass ahead of the Corsica; but seeing that it was risky, he took the more prudent course of stopping and backing.    The master of the Corsica says, in effect, that the America had got right ahead of him, in his way, and he was obliged to turn to the left as the best means of avoiding or diminishing the danger.    Now, the diagram of the courses of the two vessels shows that this could not have been so, until the Corsica had herself changed her course.    And the master of the Corsica admits that instead of keeping her course, her helm was starboarded, and

---

* 13 Stat. at Large, 60.

her course was altered two points, for the purpose of passing under the stern of the America, soon after the latter vessel was discovered. This, if so, was the first error. It was the business of the Corsica, as we have seen, to have kept on her course. After this, perceiving the danger she had brought upon herself, her helm was again starboarded, and the collision ensued. According to the master of the Corsica's own account, therefore, the accident occurred in consequence of her assuming to perform the duty which devolved on the America under the Congressional rule above quoted.

It is also evident that the Corsica was under considerable headway when the collision occurred. The force of the blow proves this. The America did not contribute to the effect of the blow, for the weight of the evidence is, that she was backing away from the Corsica at the time. The fact is, that the latter vessel was under too much speed for the place she was in—a crowded harbor, spotted with vessels at anchor and in motion. This made her headway uncontrollable, and accounts for the fact that, although her officers tried to check her speed, they were only very partially successful.

We are satisfied that the decree of the Circuit Court was right, and ought to be

AFFIRMED.