GENERAL SHERIDAN, The. See Case No. 5,078.

---

## Case No. 5,320.
### The GENERAL U. S. GRANT.
[6 Ben. 465.] [1]

District Court, S. D. New York. April, 1873.

COLLISION IN NEW YORK HARBOR—STEAMER AND SAILING VESSEL— CHANGE OF COURSE BY THE LATTER—APPREHENSION OF COLLISION.

1. A lighter bound from the East river to Jersey City, with the wind free, saw a tug coming down the North river, with a canal-boat alongside. The captain of the lighter, apprehending danger of collision, as he saw no movement on the part of the tug to avoid the lighter, kept away two points. A collision ensued, the canal-boat alongside of the tug striking the lighter on her starboard side, aft of amidships, and causing her to sink: *Held,* that the lighter was in fault for changing her course, and was responsible for the collision.

2. When a change of course is admitted or established on the part of a vessel which is under obligation to keep her course as against another vessel which is bound to avoid the former vessel, a very close scrutiny of the conduct of the former vessel is necessary.

3. The excuse for a change of course by such a vessel, that the other vessel was taking no steps to get out of the way, is not to be favored.

4. It is the actual danger of collision which determines the duties of both vessels, and not the apprehension merely.

[Cited in The Britannia, 34 Fed. 553; The Allianca, 39 Fed. 479.]

This was a libel filed by the owners of the lighter Gem, to recover the damages occasioned by her being sunk, in a collision with a canal-boat towed alongside of the steamtug General U. S. Grant. The lighter was bound from pier 3 East river to Jersey City, the wind being northeast. Arriving near Castle Garden, she saw the tug coming down the North river, towing a canal-boat, which was fastened to her starboard side, with her bow projecting beyond the bow of the tug. It was alleged, on behalf of the lighter, that the tug kept on, without taking any means to avoid her, and that, as soon as a collision was apprehended, the lighter was kept away two points, in order to avoid it, but she was struck by the canal-boat, nearly amidships, and sunk. On behalf of the tug, this change of course on the part of the lighter was charged to have been the sole cause of the collision.

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Benedict, Taft & Benedict, for libellants.
Beebe, Donohue & Cooke, for claimants.

BLATCHFORD, District Judge. It being incumbent on the tug to avoid the lighter, or to show a sufficient excuse for her failure to do so, she has assumed the burden of showing that the lighter did not fulfil her obligation of keeping her course, and that the change of course of the lighter was the absolute and direct cause of the collision. The lighter, while admitting a change of course, insists, that such change did not cause or contribute to the collision; that she made the change with a view of avoiding a collision which seemed certain; that, at the time she made it, the tug had made no movement to avoid her, and was coming on a course which was certain to bring the two vessels into collision, unless the one or the other of them made a change; that the change by the lighter was made at so short an interval of space and time before the collision as to make the movement substantially one in the extremity of peril; and, that such change is not to be regarded as a causative or contributory fault.

When a change of course is admitted or established, on the part of a vessel which is under obligation to keep her course, as against another vessel which is bound to avoid the former vessel, a very close scrutiny of the conduct of the former vessel is necessary. She has violated an express rule of navigation. Whenever such a change of course has taken place, it is always set up, that the other vessel was taking no step to get out of the way. Such an excuse for a change of course is easily made, but it is not to be favored; because, while it tends to hold rigidly the one vessel to her duty of getting out of the way, it tends to relax the obligation on the other to keep her course. Both duties are correlative, and of equal force. The libel in this case avers, that the lighter, "as soon as a collision was apprehended, was kept away some two points." A vessel whose duty it is to keep her course has no right to change it as soon as she apprehends a collision. In this case, the duty of the tug to keep out of the way of the lighter arose only when the two vessels were proceeding in such directions as to involve risk of collision; and it was under those same circumstances that the duty arose, on the part of the lighter, to keep her course. Therefore, under the statute requiring the lighter to keep her course, her apprehension of a collision could not justify her changing her course. Moreover, it is the actual risk or danger of collision that determines the duties of both vessels, and not the apprehension merely. The rule was made, and is administered, for the very purpose of preventing the vessel charged with the duty of avoiding the other, from being embarrassed by a change of course on the part of the other into danger, on the apprehension that such duty of avoidance will not be fulfilled.

It is alleged, on the part of the tug, that, if both vessels had kept their courses, there would have been no collision, and that the change of course on the part of the lighter caused the collision. It is a rather violent presumption to suppose, as is contended by the lighter, that the tug, in the daytime, and with the lighter in full view, and with the knowledge of her duty to avoid the lighter, was on a course which, if maintained, would bring her into collision with the lighter, and had kept up such course to a point too near to the lighter to enable the tug, by any affirmative movement, to avoid the lighter. It is a more reasonable presumption, if the tug was keeping her course, and was making no affirmative movement because of the lighter, that, in fact, there was no risk of collision, and that the apprehensions, on the part of the lighter, which induced her change of course, were unfounded. In this view, the change of course was not in the moment of peril, because there was no peril. The change was the result of apprehension of danger, but groundless apprehension. It would be a very unsafe principle to adopt, that, where there is no danger, and the vessel on which rests the duty of avoidance sees and apprehends no danger, the other vessel may, without ground, apprehend danger, and change her course, and cause a collision, and then claim, that, because the change was made at a very short distance off, and at a very short time before the collision, it was made in the extremity of peril.

In the present case, I am impelled to the conclusion, on all the evidence, that there would have been no collision if the lighter had not changed her course. It is also deserving of remark, that the master of the lighter states, that he put his helm up and kept off, in order to keep clear of the tug. It was not a purposeless change, nor was it one made without reference to the tug. It was deliberate, and in knowing violation of his duty, with reference to the tug, to keep his course.

The conclusion sought to be drawn from the fact that the persons on board of the lighter always saw the tug on the starboard side of the mast of the lighter, namely, that the vessels were on such courses that a collision must have ensued if such courses were not changed, by no means follows. The fact referred to may show that the courses of the vessels could not have been parallel, but it does not show that the lines of such courses would not have intersected at a safe distance astern of the tug; nor does it show that the starboarding of the lighter did not bring her directly across the course of the tug.

On the whole case, I must dismiss the libel, with costs.