## THE ZAMPA.

### (District Court, N. D. California. January 16, 1902.)

### No. 12,041.

1. COLLISION — SAILING VESSELS MEETING — APPEARANCES JUSTIFYING PRIVILEGED VESSEL IN CHANGING HER COURSE.

Under the navigation rules (26 Stat. 320), which require a vessel sailing closehauled on the starboard tack on meeting another closehauled on the port tack to keep her course, unless a departure from such rule is "necessary in order to avoid immediate danger" (article 27), and make it the duty of the other vessel to keep out of the way, the privileged vessel is justified in changing her course when in the opinion of the officer in command, in the exercise of good judgment and seamanship, a collision will otherwise be unavoidable because of the failure of the burdened vessel to take timely action to keep out of the way, and in such case she cannot be held in fault, although a collision in fact results.

2. SAME—INSUFFICIENT LOOKOUT.

The ship Reliance was sailing closehauled on the starboard tack at night in the Pacific, when she saw the red light of the schooner Zampa off her port bow at a distance of a mile and a half. The Zampa soon showed both lights, and thereafter her green light only. When the Zampa was quite close, and almost directly ahead, still showing her green light, the officer in command of the Reliance, believing a collision otherwise inevitable, changed his course to port. Immediately afterward the Zampa changed her course to starboard, and a collision resulted. Held, that the Reliance was justified, under the circumstances, in changing her course when she did, and that the fault for the collision must be placed on the Zampa for failing to sooner change her own course so as to avoid the appearance of danger, which apparently resulted from her not keeping a proper lookout, and failing to see the lights of the Reliance until immediately before the collision.

In Admiralty. Suit for collision.

Andros & Frank, for libelant.
Page, McCutchen, Harding & Knight, for respondent.

DE HAVEN, District Judge. This is an action brought by the owner of the British ship Reliance to recover damages on account of a collision between that vessel and the schooner Zampa. The collision occurred on the Pacific Ocean, between the hours of 9 and 10 o'clock on the night of January 26, 1900, the Zampa striking the Reliance abaft the forerigging, on her starboard side. There was at the time a fresh breeze from the southeast, and the weather was a little hazy. The lookout on the Reliance sighted the red light of the Zampa about two points off the port bow, when the vessels were perhaps one mile and a half apart. At this time the Reliance was sailing closehauled on the starboard tack, heading N. E. by E. ½ E., at a speed of between 7 and 8 knots an hour. The Zampa was sailing closehauled on the port tack, making a course about S. by W., and proceeding at a speed of between 4 and 5 knots an hour.

The Zampa being closehauled on the port tack, it was her duty, under the provisions of article 17 of the act of August 19, 1890 (26 Stat. 320), to keep out of the way of the Reliance, and it was the duty of the latter to keep her course (article 21, Id.), unless there were special circumstances which made a departure from this rule "necessary in order to avoid immediate danger," as provided in article 27 of the same statute. It appears from the evidence that just prior to the collision the helm of the Zampa was put hard to port, and she had fallen off one-half point, and that of the Reliance was put hard to starboard, and she had swung around five points from the course on which she was sailing at the time the red light of the Zampa was first observed by her. It is claimed by the libelant that the Zampa did not keep out of the way, as required by article 17 of the act of August 19, 1890 (26 Stat. 320), but approached so near to the course of the Reliance that there was danger of an immediate collision, and that the Reliance in attempting to avoid such collision was justified in changing her course. The burden of establishing this alleged justification for the departure from her course is upon the Reliance. The Chesapeake, 5 Blatchf. 411, Fed. Cas. No. 2,643; The Corsica, 9 Wall. 633, 19 L. Ed. 804. "When a change of course is admitted or established on the part of a vessel which is under obligations to keep her course, as against another vessel which is bound to avoid the former vessel, a very close scrutiny of the conduct of the former is necessary." The General U. S. Grant, 6 Ben. 465, Fed. Cas. No. 5,320. But, while this is so, there can be no doubt that when the vessel bound to give way does not do so in time, and as a result there is immediate danger of collision, the other may change her course for the purpose of avoiding the apprehended collision. The Catharine and Martha, Fed. Cas. No. 2,512; The Richard R. Higgins, 1 Low. 290, Fed. Cas. No. 11,768; Waldorf v. The New York, 1 Flip. 49, Fed. Cas. No. 17,057. There is but little difficulty in ascertaining the controlling facts in this case. The testimony of Doyle, second officer of the Reliance, and who was officer of the deck at the time of the collision, is, in substance, that the red light

of the Zampa was first observed two points off the port bow of the Reliance, when the vessels were, in his judgment, one mile and a half apart. This light was kept in view by him for a short time, when the Zampa showed both her red and green lights, and immediately there-after her red light was shut out, and only her green light could be seen. The Reliance kept her course until the green light, steadily drawing nearer, was a quarter of a point on her port bow, when, in the judgment of the witness, a collision was imminent, and for the purpose of avoiding it he directed the helm of the Reliance to be put to starboard, which was done, and she had swung off five points when the collision occurred. The testimony of this witness was corroborated by others of the crew of the Reliance. It furnishes a reasonable explanation of the action of that vessel in changing her course, and must, in my opinion, be accepted as true. Indeed, as to the important fact that the Reliance changed her course just before the collision, it is supported by the evidence given upon the part of the Zampa to the effect that the red light of the Reliance was first observed about one point off the port bow of the Zampa; that imme-diately thereafter both her green and red lights came into view; that next her green light only was seen, and then the collision took place; and as to the time which intervened between first seeing the red light of the Reliance and the collision the mate of the Zampa testified that when that light was sighted he at once gave orders to keep the Zampa off, and between this time and the collision the Zampa only changed her course about one-half point. This evi-dence shows conclusively that the events described by it were crowd-ed into a very short space of time before the collision, and makes it reasonably certain, not only that the Reliance changed her course at the last moment, but also shows that she was not observed by the Zampa until at or about the time she changed her course, because the history of the transaction, so far as the Zampa is concerned, is confined to the short space of time intervening between the order to keep her off and the collision, and it is apparent that it was during this time the Reliance changed her course. Upon the finding that the facts are as testified to by Doyle, the second officer of the Re-liance, that vessel was not in fault in changing her course, provided that officer exercised a reasonable judgment as to the necessity for such maneuver, in view of the conditions as then presented to him. It is urged on behalf of the Zampa that if the Reliance had kept her course there would have been no collision, and from this it is argued that no blame can attach to the Zampa. Whether, if the Reliance had continued on her course, the collision would have been avoided by the subsequent action of the Zampa, need not be determined. The question here is whether, at the time the Reliance changed her course, the officer in command was justified in believing that the Zampa was about to fail in her duty to keep off, and that there was immediate danger of collision, when her course was changed. She had a right to depart from her course if necessary in order to avoid immediate danger, and, having this right, it must follow that, if the officer in command exercised a reasonable judgment in view of all the conditions then present, the action taken by him in changing

the course of the Reliance cannot be attributed to her as a fault. This general principle, stated in different language, has often been announced. Thus: "When the vessel that has the burden of avoiding the danger has come so near that, to a reasonable, firm, and skillful navigator, it appears that the collision is unavoidable, it shall be taken to have been so." The Richard R. Higgins, 1 Low. 290, Fed. Cas. No. 11,768. And the supreme court said in the case of The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126:

"But the fact that a steamer is entitled to hold her course does not excuse her from inattention to signals, from answering where an answer is required, or from adopting such precautions as may be necessary to prevent a collision, in case there be a distinct indication that the obligated steamer is about to fail in her duty."

Again, in the case of The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, 40 L. Ed. 771, the same court said:

"The weight of English, and, perhaps, of American, authorities is to the effect that, if the master of the preferred steamer has any reason to believe that the other will not take measures to keep out of her way, he may treat this as a 'special circumstance,' under rule 24, 'rendering a departure' from the rules 'necessary to avoid immediate danger.' "

The question, then, is this: Did the officer in charge of the Reliance have reason to believe that the Zampa would not keep off, and that in order to avoid a threatened collision it was necessary to change the course of his vessel? Or, stated in another form: Was the situation such that a competent master on board the Reliance, exercising reasonable care and judgment, would have concluded that the vessels were in such proximity that in order to avoid collision it was necessary to change her course at the time it was done? Upon this point, Doyle, the officer in charge of the Reliance, in referring to the time when he gave orders to change her course, said: "At this time I allowed I was just near enough to the schooner to avoid collision. If I had not done what I did, I would have run her down." And in this he was corroborated by the third mate and by a seaman who was on watch. There is no evidence in the case which would warrant the court in finding that the judgment thus formed by the officer in command of the Reliance was unreasonable, or that the same conclusion would not have been reached by any skillful navigator placed in the same situation. Putting aside, as not entitled to any great weight, the estimates of the various witnesses as to time, it is clear that, when the course of the Reliance was changed, the vessels were very near to each other,—much nearer than they ought to have been permitted to come when the weather was such that each should have been seen by the other for the distance of at least one mile and a half.

Upon this state of facts, the collision must be attributed to the fault of the Zampa in holding on to her course too long. It is probable that her action in this respect was due to the fact that the Reliance was not seen by her as soon as she should have been; but, whatever may have been the reason, it is perfectly clear there was no attempt to keep her off until immediately before the collision, and until after the helm of the Reliance had been put to starboard.

This was too late. The real fault, therefore, and that which fixes the liability for the collision upon the Zampa, was her failure to keep off; thus bringing on the situation which justified the officer in charge of the Reliance in believing that there was immediate danger of collision unless the course of his ship was changed.

There will be a decree in favor of the libelant for the damages sustained by him and costs, and the case will be referred to United States Commissioner Morse to ascertain and report the amount of such damages.