## THE CHARLES A. CAMPBELL.

(District Court, D. Massachusetts. December 28, 1905.)

No. 1,706.

**1. COLLISION—SAILING VESSELS MEETING—FAILURE TO KEEP LOOKOUT.**

A collision between the schooners Whiton and Campbell, which occurred in the night off the coast of Cape Cod, the two vessels being on nearly opposite courses, *held* to have been due to the fault of the Whiton, which was the burdened vessel, sailing free with the wind on her port side, in not keeping an efficient lookout even after the Campbell was seen at a distance of some four miles, in consequence of which the vessels were less than a mile apart, with the Whiton headed across the Campbell's bows, and the danger of collision was imminent, before any change was made in her course which was then too late. The Campbell *held* not in fault.

**2. SAME—CONTRIBUTORY FAULT—CHANGE OF COURSE IN EXTREMIS.**

A change of course by the privileged one of two vessels approaching each other, if made to avoid a collision which, in the judgment of her master, who was a competent navigator, was otherwise unavoidable, will not be held a fault, where the dangerous situation was clearly due to the fault of the other vessel.

In Admiralty. Suit for collision.

Bingham, Smith & Hill, for libelant.
Carver & Blodgett, for claimant.

DODGE, District Judge. Between 11 and 12 o'clock in the evening of April 25, 1905, the schooners Harry L. Whiton and Charles A. Campbell came into collision off Nauset, Cape Cod. The Whiton was sunk and totally lost. By this libel her owners seek to recover damages for her loss against the Campbell.

The voyages upon which the two vessels were bound at the time took them around Cape Cod in opposite directions. The Whiton was bound northward, for Salem. The Campbell was bound southward, for Newport News. The Whiton was a three-masted schooner, was carrying a cargo of 750 tons of coal, and had on board a crew of six all told, viz., captain, mate, steward, and three seamen. The Campbell was a four-masted schooner, she had no cargo on board, and her crew included six seamen, besides captain, mate, steward, and engineer.

In passing that part of Cape Cod off which this collision occurred, vessels bound upon the above voyages respectively would tend to follow courses opposite in direction or nearly so, provided the direction of the wind were such as to permit each to steer as it would desire. The direction of the wind in this case was such as not to prevent

either vessel from heading as she wished, except to the extent below stated. Upon the evidence, the courses of the vessels, as steered before any question of collision became involved, were nearly opposite in direction. The Whiton's evidence is that she was steering N. by E., and that she had the wind, which was off shore, a little aft of abeam on her port side. According to the Campbell's evidence, that vessel was steering S., and she is claimed to have been closehauled. Her witnesses state that she had endeavored to head to the westward of S., but found that the direction of the wind did not permit her to do so. The exact direction of the wind, however, and the question whether the Campbell was sailing as close to it as she could go or not, are neither of them important. In any case the Campbell, whether or not strictly closehauled, had the wind on her starboard side, and had therefore the right of way as against the Whiton, which had the wind on her port side. The night was dark, but clear. There was no moon until after midnight. There was nothing to prevent the lights of either vessel from being seen on board the other. Each admits having seen the other's lights, either separately or together, at one time or another before the collision. Each admits having first sighted one or the other of the other's lights at a considerable distance, far enough in any event to allow ample time and room for keeping clear. The fact that they came together under these circumstances, instead of keeping clear, requires the conclusion that there was negligence on the part of one or the other, or of both.

Since the Campbell had the right of way and the duty of avoiding her was therefore upon the Whiton, the conduct of the latter vessel is first to be examined. The burden of explaining the failure to avoid collision, and of showing that it was not due to negligence on her part, is in the first place upon her. It appears from her evidence that the collision happened during the mate's watch on deck, which was to last from 8 o'clock until 12; that on this voyage she had three seamen before the mast, instead of the four, who, with the master, mate, and cook, made up her regular crew of seven; and that the mate's watch happened to be the watch left short-handed, so that it consisted on the evening in question only of the mate himself and one seaman, instead of the mate and two seamen, as would have been the case had not the vessel been making the voyage with one man less than usual in her crew. The Whiton's evidence further shows that since 10 o'clock the only persons on her deck had been the mate and the one other man in his watch, who had taken the wheel at that hour while the mate went on lookout; that the mate did not stay forward on lookout all the time after 10 o'clock, but at times left the forecastle head and attended to the pumps, which were situated on the main deck aft of the mainmast; that the vessel was leaking at the time, so much as to require pumping, at least as often as every half hour, for not less than from three to five minutes each time; and that since 10 o'clock the mate had not been at the lookout's post on the forecastle head all the time, even when he was not engaged in pumping, but had remained for a part of the time on the main deck or on the poop, instead of on the forecastle head. The mate testified

that the first he saw of the Campbell was her red light, that he first saw it when he was on the forecastle head, that it then bore about two points on the Whiton's weather or port bow, and that it was then at a distance from the Whiton which he estimated at about four miles. After seeing it, he said he left the forecastle head, went aft to the pump, spent about five minutes there in pumping, then went from the pump to the port side of the poop, and upon looking from there for the vessel he had previously seen from the forecastle head, saw her green instead of her red light, from three-quarters of a mile to a mile away. Upon this, his first view of the green light, it did not seem to him that the vessels would go clear if neither changed her course. He therefore gave the order to luff, and this, upon his evidence, was the first measure taken toward alteration of the Whiton's course after the Campbell's red light had been seen. The bearing of the green light, when he first saw it as above, he stated to be perhaps half a point on the Whiton's port bow. The vessel bearing it then seemed to him to be coming very nearly for the Whiton, and to be heading across her bow.

The mate's further evidence was that after his order to luff the Whiton came up a point or so; that he watched the Campbell and saw her red light again, indicating that she also was luffing; and that he thereupon ordered the Whiton kept off—the Campbell then being only about one quarter of a mile away. As this last order was given the captain of the Whiton arrived on deck, and instantly countermanded the order to keep off by an order to luff, taking hold of the wheel himself to assist in luffing. Collision followed at once, the Campbell's bow, according to the mate of the Whiton, striking the Whiton's starboard bow forward of her fore rigging.

Negligence on the Whiton's part, in failing to keep a proper lookout, sufficiently appears from the mate's evidence taken by itself. He was undertaking to do the lookout's duty. He knew another vessel was not far from ahead of his own vessel. With the wind as it was, her course could not in any case have been far from opposite to his own; yet, instead of watching her approach, he left the lookout's position and occupied himself at the pump or elsewhere until the approaching vessel had got within a mile of his own vessel. When at last he did look again for her, he found her where he had not expected to find her, and in a position which threatened collision. During the time of his failure to watch the Campbell's approach as above, there had been no one else to watch it except the man at the wheel, who could not from his position have supplied the want of a lookout properly stationed, even if he had known of the Campbell's presence as soon as the mate knew it, and had been from that time observing her.

The evidence given by the man at the Whiton's wheel shows affirmatively that there was no observation of the Campbell's approach by him, from the time the mate ceased to observe it. Nothing whatever was said to him by the mate about the vessel whose red light had been seen, either before or after the mate left the forecastle head. He was left to discover the Campbell for himself. This he did while

the mate was at the pump. What he first saw of her was, not her red light alone, both both her lights. They were then about three miles off, according to his estimate, and they bore about a point and a half on the Whiton's weather bow. But so far as anything to be done by the Whiton was concerned he might just as well not have seen them at all. He said nothing about them to the mate, who finished pumping and went aft without discovering that, instead of a red light, both red and green were now visible not far from ahead and bearing less rather than more over the port bow, than the red light had borne when he last saw it. If it is possible to say that the conditions did not demand immediate change of course on the Whiton's part when the approaching vessel was three or four miles away, it is wholly impossible to excuse her failure to make any change until the two vessels were within a mile of each other, into which she was led by culpable ignorance of the true situation. Each had all or nearly all sail set, and was going at a rate of six or seven knots. An interval of a mile would thus be closed in from four to five minutes. Under circumstances such as appear from the above evidence no such proximity should have been allowed to occur. It was the more dangerous because of the Whiton's ignorance. It was the Whiton's duty to have avoided it by a change of course made soon enough to have prevented it from occurring at all. If it did occur in the manner described by the witnesses from the Whiton, then that vessel was to blame for it, and cannot, on her own evidence, be exonerated from responsibility for the collision which resulted. The mate had no right to assume from what he had seen before leaving the lookout's position that no change of course would be required.

The failure to keep a proper lookout and the resulting failure to avoid dangerous proximity, with which the Whiton is thus chargeable upon her own evidence, have the further consequence that, upon questions regarding which that evidence conflicts with the evidence from the Campbell, the Campbell's evidence has the stronger claim to credit, because no such failure appears on her part in the matter of keeping a lookout. The evidence from the two vessels is strongly in conflict, as will appear, upon two important subjects: (1) The bearing of the two vessels from each other during the entire time of their approach; (2) their respective changes of course after the Whiton's first change of course by luffing. That the Whiton did luff before the vessels came together is not disputed. The Campbell's witnesses so testify, but they claim that at the time she did so the vessels were close together, and that the Campbell had already luffed as a last resort.

On board the Campbell, three men besides the captain composed the watch on deck. One of the men had been at the lookout's station forward since 11 o'clock, another had been at the wheel since 10 o'clock, the "free hand" was on deck forward, and the captain had been on deck and in command during the entire watch. From their evidence it appears that the man on the lookout first saw the Whiton's red light then distant two or three miles and bearing about two points over the Campbell's starboard or weather bow. He re-

ported it and thereafter watched it from the lookout's position. The captain, who was aft when the report was made, came forward, saw the light for himself, and then, returning aft, also watched it until the collision, using his glasses in doing so.

According to the statement of the lookout and the captain, the Whiton continued to approach and to bear more nearly ahead, all the time showing her red light only, until the red light was almost directly ahead, and the Whiton only a few lengths away, so near that collision was unavoidable unless something was done. The man on lookout then sung out, "For God's sake, luff, or we'll be into her!" The Campbell's wheel was thereupon put ha d down, but no sooner had this order been given than the Whiton showed both lights; the green light then for the first time appearing with the red. The Campbell luffed somewhat under her change of helm, but collision followed almost immediately after; the two vessels coming together nearly head on. The accounts coming from the captain and man on look-out are confirmed by those from the man at the wheel and the "free hand," so far as their observation went; but they had not, as had the captain and lookout, watched the Whiton constantly from the time her red light was first reported.

I am obliged to accept the evidence from the Campbell in preference to that from the Whiton, where they conflict; and therefore to find that the Whiton had been, at all times before the Campbell's wheel was put down, on the Campbell's starboard bow; that until then no change had been made in the Campbell's course; that the Campbell had not up to that time shown her red light to the Whiton, or been in such a position with reference to the Whiton as would cause her red light to bear over that vessel's port bow. To find otherwise requires me to reject entirely the evidence of the Campbell's watch on deck. I cannot so reject it on the strength of the evidence of the Whiton's watch on deck, for the reasons already given. I am compelled to believe, upon all the evidence, that the two men on the Whiton failed to observe accurately the true manner of the Campbell's approach, and that having negligently allowed themselves to get too near a vessel from which they ought always to have kept at a safe distance, they became confused, when their danger was suddenly realized, to such a degree as to be incapable of reporting correctly the situation then existing or what followed afterward. The mate's order to keep off, countermanded by the captain as soon as given, is an indication of confusion in judgment under the pressure of emergency.

The evidence from the Whiton tends to show that the place of collision was further off shore than would appear from the evidence from the Campbell. No conclusion, however, which would affect any of the results above reached, could in my opinion be drawn from a finding that the evidence from one vessel was more nearly correct upon this point than that of the other. No witness on either side had any more accurate means of locating the place of collision at the time it occurred than his estimate of distances from points previously passed and of courses and distances steered after passing those points. Wherever

the place of collision was, I have no doubt that the two vessels approached it upon courses which were, except as varied when collision was imminent, nearly opposite courses, intersecting at an angle of one point or thereabout; their respective courses and bearings from each other being substantially as found above.

It follows that the Whiton must be held in fault for the collision, for her failure to keep a proper lookout, for her failure to keep out of the Campbell's way as required by article 17 of the sailing rules, and also because she did not avoid crossing ahead of the Campbell as required by article 22. There was nothing in the circumstances of the case to prevent her from keeping clear of the Campbell without crossing ahead of that vessel; but while her red light bore over the Campbell's starboard bow and was coming to bear more and more directly ahead, she could only have been heading across the Campbell's bow.

The Campbell did not hold her course until the vessels came together, and it remains to consider whether her failure to do so was a fault contributing to the collision. Under the circumstances as I find them to have been, I do not think it can be so considered. From the time the Whiton had first been seen a change of course on her part tending to keep her out of the Campbell's way had been expected by those on the Campbell. Such a change they had a right to expect, but instead of it they saw the Whiton keep on into a situation which became more dangerous as the vessels got closer. The longer she continued to do so, the more strongly did her management indicate that the persons navigating her were not aware of the danger and could not be relied on to do what was required of them in avoiding it. Under such circumstances, change of course on the part of the vessel not having the duty of keeping clear, is not always fault on her part. If made to avoid a collision which in the best judgment of a competent navigator then seems otherwise unavoidable, it is held not to be fault. The City of Augusta, 80 Fed. 297, 25 C. C. A. 430; The Zampa (D. C.) 113 Fed. 541; The Queen Elizabeth, 122 Fed. 406, 59 C. C. A. 345. The competence of the Campbell's master is established by many years' experience in commanding similar vessels. The careful observation of the Whiton during her approach and the avoidance of any change of course on the Campbell's part until the red light was close under her bow, are, in my judgment, sufficient to show that the order to luff was such an exercise of his best judgment as should prevent its being regarded as a fault. Its tendency was to head the Campbell away from the Whiton, and it might, in my opinion, have avoided collision, but for the subsequent luff by that vessel—a change of course on her part which should have been made long before.

In coming to the above conclusion I have, of course, accepted the Campbell's estimate of the distance between the two vessels, when her course was changed, as much more nearly correct than that which is supported by the Whiton's evidence; and I have also found, upon the evidence from the Campbell as opposed to that from the Whiton, that the Campbell luffed before the Whiton did, or at least before

the Whiton had come up into the wind enough to let it be seen on board the Campbell that she was luffing. If the Whiton luffed three-quarters of a mile away, and before the Campbell luffed, a different conclusion would be required. But upon the whole evidence I do not believe that those were the facts.

The charge made in the libel that the Campbell failed to stand by the Whiton and render assistance to her crew is not supported by the evidence.

The Whiton had stopped in Vineyard Haven earlier on the day of the collision, in order that her mate might have a tooth extracted which had troubled him during the voyage from New York, and which was threatening to cause him further suffering. The leaky and short-handed condition of his vessel appears to have thrown upon him, since the voyage began, considerably more than his ordinary share of duty on board. These circumstances may relieve him in some degree from such personal blame as the above findings would tend to impute to him; but they cannot, of course, be regarded in determining the question of fault between the two vessels.

The Whiton is held solely in fault for the collision, and the libel is dismissed.