## THAMES TOWBOAT CO. v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Second Circuit. November 16, 1908.)

No. 51.

COLLISION (§ 66*)—VESSELS IN TOW—FAULT OF TUG.

A finding of the trial court that a collision between the hawser tows of two meeting tugs in the Kills, opposite Elizabethport, N. J., was due solely to the fault of the tug, which was proceeding eastward with the tide, having a tow of 19 barges about 1,000 feet in length, affirmed; it appearing that she initiated the passing agreement without being able to properly handle her unwieldy tow, and in view of the rule that, where the fault of one vessel is clearly established, it is not enough for her to raise a doubt with regard to the management of the other.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 84; Dec. Dig. § 66.*]

Appeal from the District Court of the United States for the Southern District of New York.

The court held the respondent solely in fault for a collision which occurred between the scow Busy and the barge Ray, the former being the tail boat of a hawser tow in charge of the respondent's tug, No. 32, and the latter being the port boat in the hawser tow of the tug Aries. The opinion below is reported in 157 Fed. 305.

Robinson, Biddle & Benedict (W. S. Montgomery, of counsel), for appellant.

Carpenter, Park & Symmers, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. We have no doubt of the negligence of tug No. 32 for the reasons stated by the District Judge, and deem it unnecessary to add to what he has said in this regard. As to the Aries being free from fault we entertain some doubt but, after full consideration, we think the testimony is not sufficiently clear to warrant us in directing a division of the damages.

It is charged that the Aries was negligent: (1) In not answering the first signal of one whistle from No. 32. (2) In not stopping and waiting for No. 32 and her tow to pass. (3) In attempting to pass between the steamship moored at the long wharf and No. 32's loaded tow at a time when the Aries must have seen that there was danger of collision.

In overruling these defenses, all of them involving questions of fact, it must be remembered that the District Judge had the advantage of seeing and hearing the witnesses and we have repeatedly held that his findings should not be disturbed unless manifestly against the weight of evidence. As to the first fault charged the District Judge says:

"The fault of the Aries in not hearing and answering the first signal of the No. 32 was obviously not contributory to the collision and may be disregarded."

It is true that the Aries did not hear the first signal but a second signal of one blast was given and was answered by the Aries. So that

by the initiative of No. 32 there was an understanding between the approaching tugs that .they were to pass port to port. We are unable to see how the situation would have been altered had the first signal been heard; the second followed almost immediately and there is nothing to indicate that the navigation of the Aries would or could have been changed had her master heard the signal a few moments sooner.

The absence of a lookout is not alleged in the answer or alluded to by the judge, probably because he thought, as we think, that the collision was in no way attributable to the absence of a lookout.

The District Judge found that there was no proof of a general custom requiring the Aries to stop before reaching the narrow point in the channel where the flood tide sets strongly against the bulkhead at Elizabethport and we think this finding is amply sustained by the proof. There was testimony to show that a tacit understanding existed among the railroad tugs that the tow breasting the tide should wait below the turn until the tow proceeding with the tide had passed the point of danger; but there was nothing which compelled the Aries to stop at this point.

No. 32 had a large unwieldy tow, about 1000 feet in length, consisting of 18 loaded barges in six tiers of 3 each and a light scow tailed onto the port boat of the last tier. The scow was so fastened that in rounding the turn she swung 4 or 5 feet farther than the rest of the tow towards the northerly side of the channel and caused the damage to the libelant's boat. The master of No. 32 knew all the details of the make up of his tow—the length of the hawser, the number of barges and the swinging scow in the rear. It was for him to say whether the flotilla could safely round the turn and pass at that point a tug towing 4 barges on short hawsers. If danger threatened he should have given an alarm signal, but instead of doing so he gave the usual passing signal, which was a clear intimation to the Aries that no danger of collision was to be apprehended. When the danger signal was finally given it was too late to avert disaster.

We cannot agree with the counsel for appellant in his contention that the signal of No. 32 was a bend whistle and not one initiating a maneuver. The District Judge finds that the master of No. 32 "first blew a signal blast of his whistle to the Aries, which indicated a passing to the right." We are unable to find anything in the record in conflict with this finding. Furthermore, the signal was not "one long blast of the steam whistle" and the bend was not such a one as is described in rule 5 (U. S. Comp. St. vol. 3, p. 2882).

The navigation of the Aries was without fault contributing to the disaster; she could not have gone closer to the northerly side of the channel without danger of collision with a steamer lying at the wharf, and, in the absence of proof of a custom requiring her to stop, we cannot find that her failure to do so was negligence. The fault of No. 32 in proceeding around the bend without a helper to keep the tail of her tow in line and with no warning signal to the Aries so clearly accounts for the accident that we think we are not called upon to speculate further as to its cause.

In The Livingstone, 113 Fed. 879, 51 C. C. A. 560, this court said:
"We understand the rule as laid down by the Supreme Court to be that where fault on the part of one vessel is established by uncontradictory testimony, and such fault is, of itself, sufficient to account for the disaster, it is not enough for such vessel to raise a doubt with regard to the management of the other vessel."

See, also, The Queen Elizabeth, 122 Fed. 409, 59 C. C. A. 345, and cases cited.

The decree is affirmed with interest and costs.