## THE TRANSFER NO. 10.

### (District Court, S. D. New York. November 10, 1904.)

1. COLLISION—STEAM VESSELS MEETING IN EAST RIVER—NAVIGATING ON WRONG SIDE OF CHANNEL.

Vessel *held* in fault for collision occurring while such vessel was navigating the East river below Corlear's Hook on the left-hand side of the channel and near the Manhattan shore, such navigation being in violation of the narrow-channel rule requiring vessels to keep to the right, and of the East river statute requiring vessels using the East river to navigate as nearly in the center thereof as possible.

2. SAME—VIOLATION OF RULES—CUSTOM.

Violation of statutory rules of navigation cannot be justified upon the ground that it is customary for vessels to violate them under certain tidal conditions.

3. SAME.

The question in a collision case is not what the colliding vessels do when they get down close to each other, but what maneuver they should have adopted under the rules when far enough apart to maneuver deliberately and safely.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 15, 16.]

4. SAME.

When a vessel deliberately places herself in a position where she is not free to maneuver, and remains therein until a collision happens, her inability to maneuver immediately before contact is no excuse, her embarrassment being brought about by her own negligence.

In Admiralty. Suit for collision.

Henry W. Taft (Joseph H. Choate, Jr., of counsel), for claimant.
John F. Foley (Howard S. Harrington, of counsel), for libelant.

HOLT, District Judge (orally). This seems to be a pretty clear case. In the first place, the Mary J. was on the right side of the river, and both these transports were on the wrong side of the river. The state statute requires that steamers going up and down the East river shall keep near the middle of the stream, and the harbor rules require that in going through narrow channels each vessel shall keep at the right-hand side of the middle of the channel. These rules in this case made it the duty of these transports to be on the right-hand side of the center of the stream, and, in point of fact, admittedly they were on the left. The fact that it may be the custom to do this when there is an ebb tide, and that it may be easier to go up on the New York side than on the other side, and that they thereby can go a little faster, does not alter the fact that any vessel that goes up in that way violates the law and takes the risk, and, if there is any collision, is presumably in fault.

But aside from that, after these transports turned the Hook they could look straight up the river, and had no difficulty in seeing. And the question in this case, as in all collision cases, is not what the colliding vessels do when they get down close to each other, but what was the maneuver which they adopted, and what was the maneuver which it was their duty to adopt under the rules of the road, when they were still far enough apart to adopt those ma-

neuvers deliberately and safely. The evidence satisfies me in this case that when these two vessels saw each other they were end on, or nearly so. The rule does not permit two vessels to pass starboard to starboard if they are not exactly end on; the rule is "end on, or nearly so." The general rule is to pass to the right. That is the foundation of all the rules of the road. It is only in exceptional cases where you pass to the left. The cases where you are entitled to pass starboard to starboard are when two vessels are approaching each other on lines each of which is so far to starboard of the other as to justify the exception to the general rule. I think in this case the vessels were about end on, and in any event the Mary J. was not on a course sufficiently to the left of the other's course to justify her in sounding two whistles and endeavoring to pass starboard to starboard. But whether she was or not, she, in fact, sounded one whistle, and, if the transports believed that it would be dangerous to acquiesce in that whistle, they should have sounded alarms. That is the rule. If they were not going to acquiesce in her course, they should have sounded alarms, and the duty was just as strongly on No. 10, in my opinion, as on No. 15, for admittedly the Mary J. could not pass between them, and, if she sounded one whistle, it was certain she was going to try to pass No. 10 port to port, and there was more danger that she would come into collision with No. 10 than with No. 15. The Mary J. sounded one whistle, and there was no reply. That was a violation of the rules. Then she sounded one, and then No. 15 sounded one, acquiescing in the arrangement, and then, when the two boats were right on each other, the No. 10 sounded alarm whistles and backed.

It has been said that No. 10 could not pass to starboard because No. 15 was overlapping her. But that is a situation which No. 10 should not have got into. If No. 15 was faster, and could pass her, No. 10 should have slowed up and fallen back until she would have been able to maneuver in both directions. A vessel that is coming on and meeting others should not have another hanging on her side so she cannot go in either direction. But the evidence here shows that, when they first saw the Mary J., it was the duty of both the transports to go on the other side of the river. What they did was that, although they saw two tugs coming down on the New York side of the river on a strong ebb tide, so that the tugs could not do anything but go ahead, and could not stop and back, the transports, nevertheless, undertook to go up on the New York side and meet them.

I think the transfer No. 10 was clearly at fault and that the Mary J. was not at fault, and that there should be a decree for the libelant, with a reference to ascertain the damage.