## THE ALBATROSS.

### LINVOG et al. v. BRAZIL.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1927.

No. 5100.

1. **Collision** ⊜⟹75(1)—**Fisherman killed in collision held not to have violated law requiring signal, where he stood in dory, waved arms, and shouted (Comp. St. § 7847, subd. [k]; § 7900).**

In libel for death of fisherman in collision between motor ship and fishing dory, deceased *held* not to have violated International Rules, art. 9, subd. [k], being Comp. St. § 7847, providing for displaying of "efficient signal" by fishing vessel when another ship approaches, where he and companion were standing and raising arms and shouting, in view of article 26 (Comp. St. § 7900), requiring certain vessels to avoid fishing boats.

2. **Collision** ⊜⟹17—**Fishermen in dory held not negligent in continuing work after discovering approach of motor fishing vessel.**

In libel for death of fisherman in collision between motor ship and fishing dory, deceased

20 F.(2d)—2

and companion *held* not negligent in continuing work as fishermen after discovering approach of motor ship, where visits from such a ship were not unusual.

3. **Collision** ⊜⟹77—**In libel for death of fisherman in collision, respondent with no lookout forward of pilot house held to have failed to maintain proper lookout.**

In libel for death of fisherman in collision between motor ship and fishing dory, defendant *held* to have failed to maintain proper lookout, where there was no lookout forward of pilot house, and vision of one behind wheel was obstructed by masts, and master, who had relieved helmsman, testified that glare of sun interfered with vision from pilot house.

4. **Collision** ⊜⟹123—**In libel for fisherman's death in collision, respondent must show she was without fault.**

In libel for death of fisherman in collision between motor ship and fishing dory, respondent had burden of showing that she was without fault.

5. **Collision** ⊜⟹108—**In libel for death of fisherman in collision, due to respondent's failure to obey navigation rules, liability did not shift from respondent because of deceased's fault, if any, in continuing to haul in trawl.**

In libel for death of fisherman in collision, fault, if any, of decedent in continuing to haul in trawl until time of collision, did not shift from respondent ship liability for collision occurring primarily by reason of her failure to obey rules of navigation.

6. **Death** ⊜⟹99(4)—**$10,748 held not excessive for death of 47 year old fisherman earning $2,132 annually.**

$10,748 *held* not excessive for death of 47 year old fisherman earning $2,132 a year, who left surviving him widow and four children of from 3 to 10 years of age, had life expectancy of 23.8 years, worked steadily, was in good health, and not disabled by occupation, and sent or brought all pay checks home.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Libel by Theresa Brazil, as administratrix of the estate of George J. Brazil, deceased, against the American gas screw motorship Albatross, etc.; Elias Linvog and another, claimants. Decree for libelant, and claimants appeal. Affirmed.

Winter S. Martin and Ralph A. Horr, both of Seattle, Wash., for appellants.

Pierce Lonergan and H. A. P. Myers, both of Seattle, Wash., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The appellee, upon her libel in rem against the motor fishing vessel Albatross, to recover damages for the loss of her husband, a fisherman who came

to his death through collision between said vessel and a fishing dory, in which he and another were hauling halibut trawls, obtained a decree for $10,748, the value of the Albatross, which had been surrendered in a proceeding for limitation of liability. The accident occurred on the halibut fishing grounds about 70 miles off the coast of Vancouver Island, an hour before sunset on a day in June when the weather was clear and the wind was mild. The court below found that the collision was the result of the negligence of the Albatross in failing to keep a proper lookout.

[1] The appellants' contention is that the fishermen in the dory were at fault, in that they violated the international collision rules by failing to display the required signal when they saw the Albatross approaching them; also in that, in taking in their trawl, they hauled their dory upon a crossing course, leading to contact with the approaching vessel, which they continued to do until they came to the point of collision, although they saw the Albatross coming toward them without change of course. Subdivision (k), article 9, of the International Rules to prevent collisions (Comp. St. § 7847), relied upon by the appellants, provides:

"All vessels or boats fishing with nets or lines or trawls, when under way, shall in daytime indicate their occupation to an approaching vessel by displaying a basket or other efficient signal where it can best be seen. If vessels or boats at anchor have their gear out, they shall, on the approach of other vessels, show the same signal on the side on which those vessels can pass."

The declared purpose of the rule is to indicate the occupation of the fishing boat to an approaching vessel, since a fishing boat with nets or lines or trawls out is entitled to the right of way over an approaching vessel. Section 7900, art. 26, U. S. Comp. Stat. 1918. And the provision for displaying a basket or other efficient signal is not to enable approaching vessels to see the fishing vessel, but to protect fishing lines, nets, and trawls. But, even if the appellants' contention as to the purpose of the basket or other efficient signal is correct, the rule was complied with in the present case; for it is not disputed that, from the time when the Albatross was 200 feet away, one of the fishermen was standing up in the dory, and that just prior to the collision, and at the time when the Albatross was from 20 to 30 feet away, both fishermen were standing and raising their arms and shouting. A man standing in a dory 20 feet long, with two or three feet freeboard, is believed to be as efficient a signal as is a basket "displayed where it can best be seen."

[2] Nor can ground be found to sustain the appellants' contention that the deceased and his companion were negligent in continuing their work as fishermen after they discovered the approach of the Albatross. The dory was being operated against wind and tide. The fishermen were winding their trawl by means of a girdy and were busily occupied with their work. They assumed, and they had the right to believe, that the Albatross would change her course sufficiently to avoid them, notwithstanding that, during the time in which she moved 200 feet in their direction they moved their dory 50 or 60 feet toward her line of approach. The Albatross was a vessel built especially for halibut fishing, and according to the testimony was so constructed as to be handled instantly from the deck or pilot house. She had been cruising around all day in sight of the fishermen. The latter were not surprised at seeing her approaching them, as, according to the testimony, such visits from motor fishing boats were not unusual. They thought the Albatross was coming up close, in order to see what they had taken. She was moving at about 4½ or 5 miles an hour, in recognized fishing waters, in the vicinity of numerous small boats belonging to herself, to the Yakutat, and to the Tordensjold, all engaged in halibut fishing. When she was 200 feet away from the dory, both fishermen shouted and one of them said: "I wonder if they see us. They are not going to take our word for what we have."

[3] It was clearly shown that the Albatross failed to maintain a proper lookout. The master, who was standing at the starboard door of the pilot house, 45 or 50 feet astern of the stem, entered the pilot house about five minutes before the collision and relieved the helmsman, who went below to the engineroom and there remained until the collision. There was no lookout forward of the pilot house, and it was shown that the vision of one standing behind the wheel was obstructed by the masts. A fundamental precaution to be observed in navigation is the maintaining of a lookout as far farward as possible, where the view is in no way obstructed, and it is held that the wheelhouse is not a proper place, and that neither the master, when acting as an officer of the deck, nor the helmsman, is a proper lookout. The Ottawa, 3 Wall. 268, 18 L. Ed. 165; Chamberlain y. Ward, 21 How. 548, 16 L. Ed. 211; The Ariadne, 13 Wall. 475, 20 L. Ed. 542; The Colorado, 91 U. S. 692, 23 L. Ed. 379. And the fact,

testified to by the master of the Albatross, that the glare of the sun off his starboard bow interfered with vision from the pilot house, was but an added reason for compliance with the rule. The Prinz Oskar (C. C. A.) 219 F. 483.

[4, 5] The Albatross had the burden of showing that she was without fault, if she would avoid liability. The Marshall O. Wells (D. C.) 172 F. 984, affirmed (C. C. A.) 178 F. 918. If the fishermen in the dory were at fault in continuing to haul in their trawl until almost the very moment of the collision, it was a fault committed in extremis, and it did not shift from the Albatross liability for the collision, which occurred primarily by reason of her failure to obey the rules of navigation. The Nichols, 7 Wall. 656, 666, 19 L. Ed. 157; The Stifinder (C. C. A.) 275 F. 271; The Lafayette (C. C. A.) 269 F. 917, 925; The Buenos Aires (C. C. A.) 5 F.(2d) 425, 431.

[6] We cannot agree that the damages awarded by the court below were excessive. The deceased was 47 years of age. He left surviving him a widow and four children, of from 3 to 10 years of age. He had been a fisherman ever since his marriage. His average annual income derived from fishing for 5 years prior to his death was $2,132. He sent or brought all his pay checks home. He had a life expectancy of 23.8 years. He worked steadily, he was in good health, and had not become disabled by his occupation. The appellee has been deprived, not only of the income which he would have earned, but of his attention and care on behalf of herself and her children.

We find no error. The decree is affirmed.