## THE DONAU.

### BORDER LINE TRANSP. CO. v. NORD DEUTSCHER LLOYD.

No. 12968.

District Court, W. D. Washington, N. D.
March 13, 1931.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for libelant.

Bogle, Bogle & Gates, of Seattle, Wash., for respondent and claimant.

NETERER, District Judge.

On November 21, 1929, at approximately 6 a. m., about the break of day, the Border King and the steamship Donau collided in the waters of Puget Sound off Marrowstone. The Border King was entering the Puget Sound from Vancouver, and the Donau was outgoing from the port of Seattle. The Border King had a course of east by south three-quarters south, and the Donau northwest by one-half north. At 5:52, each vessel, being about three miles from the other, changed its course: The Donau claims two points to starboard, and the Border King claims to starboard, from east by south three-quarters south, to southeast. After the change and the Donau was straight on the course, she gave one blast of the whistle, to which there was no answer, the Border King being about one-half point off the Donau's port bow. The captain appeared on the bridge and said, "What is it, Pilot?" and was informed of the approaching vessel, and after a short period, directed, "Blow one blast." There was no answer.

After the change of courses, the Border King showed to the Donau its green light, "range barely cracked," " * * * indicated that he (Border King) was crossing my (Donau) bow just the slightest amount"; "it was so slight I could not see why I could not see his red light." The green light of the Border King was exposed until the collision. The vessels approached from opposite directions head and head, or nearly so.

The Donau has a gross tonnage of 9,026; deadweight, 12,040; length, 545 feet; 63½ feet beam; crew of 65; and is a freight steamer with small passenger limit, and was in charge of a pilot on Puget Sound waters of 35 years' experience, who directed the navigation.

The Border King is 165 feet long, and "answered very quick." It had a crew of 14 men and three officers (captain and two mates). It has a pilot house 100 feet from the stem, which is inclosed by four windows —two in front, one on the port, and one on the starboard side. All windows were closed, except that on the starboard side. The lookout also discharged the duty of night watchman, making regular inspection every "half hour or hour." The lookout was stationed just forward of the mast. When he saw the Donau "she was dead ahead." He heard one whistle of the Donau, he says, eight or ten or fifteen minutes before, and again says, just before the collision. I think the fact is that he did see the Donau about eight minutes before the collision just after she changed her course, because "she was dead ahead." He reported no lights to the second officer, who was officer of the deck and stationed in the pilot house at the starboard window. The second officer, after he saw the lights, 5:54 or 5:55, from the starboard pilot house window, says the lookout "was calling the watch at that time," and, in answer to the question, "Did he get back on the forecastle head before the collision?" he answered, "No, sir." The watch of the lookout was from 6 p. m. to 7 a. m.

Immediately after changing the course of the Border King the second officer in charge "went back" to see the standard compass aft of the captain's room, which was about 25 feet aft of the pilot house, and was gone, he says, about a minute. I am satisfied it was longer; and between 5:53 and 5:54 (if in the compass room a minute) he saw "her red light was just cracked." "I saw the range lights and her side lights;" "both side lights were showing at that time." Between 5:54 and 5:55 (assuming he was in the compass room only a minute), he said, "They were showing a little bit like she was coming on me." Shortly after the Donau's second blast and just before the last blast, when the vessels were approximately 2,000 feet or less apart,

the pilot of the Donau said to the captain, "If there is not something done there will be a collision," and the captain directed the chief officer to blow one blast, which was the third, and the order, "Throw the stern to port and the bow to starboard," was executed and the engines reversed. The second officer of the Border King heard the blast, "saw the red light right after the first mate came in the wheel house," he says, at 5:58, but it must have been later. He says, "I glanced to see where he was and he had the red light on me." "I gave one whistle and tried to get my vessel clear and put her hard aport and full astern," which was at 5:59 by the engine room log, and the Donau on reverse engines at 6 miles an hour at 6:00 scraped the Border King on her port bow, and on rebound struck her just aft the wheelhouse.

There would have been no collision if the Border King, after the Donau, by two blasts, tried in vain to ascertain her intentions, had met her duty and discharged her responsibility in asserting her power by porting her helm and reversing her engines (she "answered very quick") or kept out of the way by any proper efficient maneuver which she had time to execute, for the navigating officer confessedly saw the range lights and side lights of the Donau at 5:54 or 5:55 "when they were showing a little bit like she was coming on me." The Steel Inventor (C. C. A.) 43 F.(2d) 958. The vessels were moving approximately 10½ and 12½ miles per hour, respectively; the weather was fine and clear; the sea smooth and open, and visibility unimpaired.

█ The conclusion is obvious that, with the navigating crew of the Border King, efficiency and power did not go along with duty and responsibility. The pilot house, being glass inclosed, prevented the hearing of the blasts of the Donau by helmsman or any one therein, and during part of the critical time the officer of the deck was not in the pilot house, but was concerning himself with the magnetic course rather than his course with relation to the approaching vessel head and head or nearly so, which was in plain view, and the lookout was not at his post performing his duty. See The Albatross (C. C. A.) 20 F.(2d) 17; The Tillicum (D. C.) 217 F. 976, affirmed (C. C. A.) 230 F. 415. Nor is the helmsman or officer of the deck a proper lookout. The Albatross, supra. A lookout must be constant and vigilant. The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152. Chamberlain v. Ward, 62 U. S. (21 How.) 548, 16 L. Ed. 211. The master of the Donau

had no option as to passing. The rule is mandatory and does not permit two vessels head and head or nearly so to pass starboard to starboard. The foundation of the Rules of the Road is to pass to the right. The Transfer No. 10 (D. C.) 137 F. 666. La Boyteaux. Rules of the Road at Sea, 111. It was the duty of the Donau as the privileged vessel to keep her course and speed, and it was the duty of the Border King to keep out of the way. Had the Donau deviated from the rule and a collision resulted, she would have been held at fault, even though she acted with the best intentions. The Delaware, 161 U. S. 459, 16 S. Ct. 516, 40 L. Ed. 771.

Article 19 of the Inland and International Rules (33 USCA §§ 104, 204), requires: "When two steam vessels are crossing so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way of the other."

Article 21 of both rules (33 USCA §§ 106, 206): "Where by any of these rules one of the two vessels is to keep out of the way, the other shall keep her course and speed."

Article 22 of both rules (33 USCA §§ 107, 207): "Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other."

Article 23 of both rules (33 USCA §§ 108, 208): "Every steam vessel which is directed by these rules to keep out of the way of the other vessel, shall, on approaching her, if necessary, slacken her speed, or stop or reverse."

█ The single blast of the Donau indicated that she expected the Border King to pass under her stern. The Britannia, 153 U. S. 130, 14 S. Ct. 795, 38 L. Ed. 660.

Pilot Rule 3: "The signals for passing by the blowing of the whistle shall be given and answered by pilots in compliance with these rules, not only when meeting head and head or nearly so, but at all times when the steam vessels are in sight of each other and passing or meeting. * * * The whistle signals provided in the rules for steam vessels meeting, passing or overtaking are never to be used except when steam vessels are in sight of each other. * * *"

The facts in this case are clearly within The Newport, 276 U. S. 454, 48 S. Ct. 369, 72 L. Ed. 651. The instant case is distinguished from the West Hartland Case (D. C.) 295 F. 547; Id. (D. C.) 297 F. 330; affirmed (C. C. A.) 2 F.(2d) 834. If The West Hart-

land had kept her course and speed there would have been no collision. Having deviated from the rule by wrongful maneuver, she assumed the risk.

The Donau was not at fault in keeping her course and speed in harmony with the rule, supra, for navigation at sea. Her master could not know the result of departing from it, and be held to assume the risk, and, when he ported his helm and reversed his engines, he did not contribute to the collision, but mitigated the damage, and but for this maneuver, instead of scraping the port bow of the Border King, there would have been direct forceful contact, with possible destruction of the Border King, much damage to the Donau, and likely loss of life. Wilson v. Pacific S. S. Co., 276 U. S. 454, 48 S. Ct. 369, 72 L. Ed. 651.

To apply or distinguish the many cases cited would unduly extend this opinion.

Decree dismissing the libel may be presented on notice.