### CIERI v. DODGE.

### No. 92.

Circuit Court of Appeals, Second Circuit.
Nov. 16, 1936.

### THE VIRGINIA AND JOAN.

### WONSON v. GIACALONE.

### No. 3160.

Circuit Court of Appeals, First Circuit.
Nov. 5, 1936.

A. F. Christiansen, of Boston, Mass. (Sylvester F. Whalen, of Boston, Mass., on the brief), for appellant.

G. Philip Wardner, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal from an interlocutory decree of the District Court holding the Virginia and Joan solely responsible for the loss of the Josie as a result of a collision between the two vessels which took place about 11 a. m. on September 20, 1934, on the high seas about 10 miles northeast of Thatcher's Island. The Josie was a power-driven "trawler" or "dragger" about 55 feet in length and less than 20 tons burden. Like other draggers, she was rigged with ropes running from each side of the vessel up to a block on the mast about 16 or 17 feet high, and thence running out over the stern of the boat on each side, entering the water 5 or 6 feet behind the stern. At the end of each rope was a board or "door" weighing about 350 pounds. Attached to the boards was a big net with floats to keep the top of the net near the surface and with 750-pound chains to keep the bottom of the net down. The apparatus extended about 350 fathoms behind the stern of the boat. The Virginia and Joan was about 72 feet in length, and 40 tons burden. She was equipped with a 90 horsepower engine and had a maximum speed of 8 miles. At the time of the accident the Josie was trawling proceeding in a northwesterly direction, at a speed of 1½ knots per hour. The Virginia and Joan had been tending her gill nets, which were located off the Isles of Shoals about 20 miles from Thatcher's Island, and was returning to Gloucester at the time of the collision. She was proceeding on a southwesterly course, at about 5½ knots per hour. The sea was smooth, with little or no wind. The appellant claimed that there was a dense fog at the time of the collision; the appellee that there was visibility for at least one-half mile. The Josie at no time changed her course or speed. The Virginia and Joan made no change until just before the collision, when she put her wheel hard astarboard and reversed her engine. It was too late, however to avoid collision, and the Virginia and Joan struck the Josie on the starboard side near the foremast. After the collision, the Virginia and Joan took the Josie in tow and started for Gloucester, but after two hours the Josie sank. By an interlocutory decree entered March 31, 1936, the District Judge held the Virginia and Joan solely at fault. From that decree this appeal is taken.

As to visibility, the District Judge found, that "there was some fog on the day of the collision, but that it was still possible to see a vessel the size of the Josie at least a quarter of a mile away, so that there was plenty of time for either boat to change her course." "The captain at the wheel, and the crew (of the Josie) saw the Virginia and Joan at least a quarter mile away. The Josie was aware of the approach of the other boat, and the want of a lookout (on her) was not, and under the circumstances here presented could not have been, a contributing cause of the collision." He also found "that there was no failure (by the Josie) to give the required fog signals, and no fault as to the condition of the vessel."

These findings are challenged by the appellant as clearly wrong. The evidence was in irreconcilable conflict. All the witnesses on the Virginia and Joan testified that there was a thick fog with visibility not over 150 feet, that no fog signals were heard from the Josie, and that after she was sighted everything possible was done to avoid collision. All the witnesses on the Josie testified that there was only a light fog with visibility of at least half a mile, some said much farther, and that she was properly blowing fog signals. The facts which were clearly established were not of decisive significance either way. In this situation it cannot be said that the conclusions of the District Judge were clearly wrong. His findings of fact must be accepted.

The Josie had the Virginia and Joan on her starboard hand on crossing courses which involved risk of collision. Under article 19 of the International Rules (33 U.S.C.A. § 104) she was bound to keep out of the other vessel's way and was at fault for the collision unless the case is governed by article 26 (33 U.S.C.A. § 111), or was one of special circumstances under articles 27 or 29 (33 U.S.C.A. §§ 112, 121). Article 26 is as follows: "Sailing vessels under way shall keep out of the way of sailing vessels or boats fishing with nets, or lines, or trawls. This rule shall not give to any vessel or boat engaged in fishing the right of obstructing a fairway used by vessels other than fishing vessels or boats." 33 U.S.C.A. § 111. This article was agreed upon at the International Marine Conference at Washington in 1889 and was adopted by this country in the following year. 26 Stats. 327. Doubts appear to have arisen as to the status of steam trawlers under it. In 1897 a committee was appointed by the British Board of Trade to consider "the expediency of requiring all ships to keep out of the way of *steamships* (italics supplied) when such ships are engaged in fishing." This suggestion was due to the fact that article 26 gives preferred status only to *"sailing vessels"* and to *"boats"* engaged in fishing. The committee reported inter alia that to give an absolute privilege to steam trawlers would be unduly favorable to them in cases of collision in thick weather, that trawlers had a certain restricted ability to maneuver, and that to accord them an absolute privilege was undesirable and would probably increase danger rather than diminish it. At the same time the committee reported "that the almost universal practice is that free steamers avoid steam fishing vessels whenever they see that they are fishing, a practice which, we have no doubt, will be observed in the future as it has been in the past." Parl. Pap.1898, C. 8888, pp. 5 and 6. The Josie was not a *"sailing vessel."* We do not think she was a *"boat"* within the meaning of article 26 (33 U.S.C.A. § 111). Without attempting an inclusive definition of that word as used in this article, we are clear that it does not include a craft 55 feet long equipped with machinery powerful enough to handle a trawl. The construction of the Josie is not described; but such a boat would ordinarily be decked over and have living accommodations for her crew and would be able, if occasion required, to keep the sea, except in extreme weather, with reasonable comfort to her crew. The word "boat" in article 26 does not refer to this type of craft. In another part of the rules, "fishing vessels" of less than 20 tons are referred to. Article 9 (33 U.S.C.A. § 79). To that class we think the Josie belongs. See United States v. Open Boat, 5 Mason, 120, 137, Fed.Cas. No. 15,967. She was not privileged under article 26. In The Marshall O. Wells (C. C.A.) 178 F. 918, the boat in question was a small fishing boat; in The Albatross (C. C.A.) 20 F.(2d) 17, it was a dory. Both were clearly privileged under article 26. The New Moon (D.C.) 55 F.(2d) 928, involved a motor fishing boat of the same length, 55 feet, as the Josie. The judgment was rested on local custom and the requirements of good seamanship under what appear to have been special circumstances, viz., a fishing craft circling to

262

close her seine. We do not doubt that, if a vessel or boat is privileged under article 26 so that sailing vessels must keep out of her way, steamers also must do so. But we do not think that this article which in terms relates only to *"sailing vessels and boats"* ought to be extended by construction so as to include steamers. In holding that it did include them we think the District Judge was in error.

It does not follow, however, that the case is an ordinary one of steamers on crossing courses under article 19 (33 U.S. C.A. § 104). The Josie was not sailing free; she was greatly restricted in her movements by her trawl. Her situation was evident at a glance to any experienced navigator. It apprised him that she was unable to maneuver effectively to avoid collision. By the ordinary practice of seamanship, the Virginia and Joan should have kept out of the Josie's way. The Grovehurst, L.R.1910 Pb.Div. 316, 323. Assuming that the visibility was as found by the District Judge, there was no excuse for her failure to do so. The case is one either of special circumstances under article 27 (33 U.S.C.A. § 112) or of neglect of precaution required by the ordinary practice of seamen under article 29 (33 U. S.C.A. § 121). See The Grovehurst, supra.

The decree appealed from is affirmed, but without costs.