## WILSON ET AL. *v.* PACIFIC MAIL STEAMSHIP COMPANY ET AL.

## PACIFIC MAIL STEAMSHIP COMPANY ET AL. *v.* WILSON ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

Nos. 146 and 173. Argued January 6, 1928.—Decided April 9, 1928.

In fine, clear weather, on a smooth, open sea, the Newport, an iron passenger steamer, proceeding eastward at nine knots, rammed the port side of the Svea, a wooden steam schooner, steaming northward at eight knots. They had been approaching each other in full view for more than half an hour. Twenty minutes before the collision, the master of the Newport quitted the bridge, leaving an

inexperienced officer in charge; and, at the trial, he failed to explain this conduct or to show what, if any, directions he gave or precautions he took to insure proper navigation. Each vessel held her course and speed up to the móment of the collision. The Svea had tried, in vain, by repeated blasts of her whistle, to ascertain the Newport's intention. The Newport could have averted the collision by porting her helm or reversing her engines two minutes before it occurred, and there was nothing to inform the Svea that this would not be done until too late for her master to maneuver into safety. *Held:*

1. That the master of the Newport was presumptively negligent and, in the absence of clear exonerating evidence, was personally liable. P. 460.

2. The Svea was not at fault in maintaining her course and speed, pursuant to the fundamental rule of the International Rules for Navigation at Sea. Her master could not possibly know the result of departing from it, and, on the facts, could not be held indiscreet in following it. P. 460.

15 F. (2d) 342, (C. C. A.,) reversed in part, affirmed in part.

District Court (Am. Mar. Cas. 1924, 1285,) affirmed.

CERTIORARI, 273 U. S. 686, 690, to a decree of the Circuit Court of Appeals which reversed one by the District Court in libel proceedings growing out of a collision at sea. The District Court held the Newport and her master liable and exonerated the Svea. The Circuit Court of Appeals held both ships at fault and the master of the Newport also liable.

*Mr. Louis T. Hengstler,* with whom *Mr. Frederick W. Dorr* was on the brief, for petitioners in No. 146 and respondents in No. 173.

Both vessels have distinct legal obligations; neither the one nor the other is privileged in any proper sense. That this view is the correct one appears from the language of the rule itself: " shall keep her course and speed." This is as imperative a duty as the duty of the other vessel, that it " shall keep out of the way." *The Delaware,* 161 U. S. 459; *The Orduna,* 14 Asp. 574; *The Haida,* 191 Fed. 623.

Any distinct indication that the *Newport* was about to fail in her duty to avoid the *Svea* being absent, the *Svea* was not in fault under the *Delaware case* for maintaining her course and speed until the vessels were *in extremis*.

Under the settled law, the *Newport*, being admittedly at fault, assumed the burden of showing beyond any doubt that some fault of the *Svea* contributed to the collision. *The City of New York*, 147 U. S. 72; *The Victory & The Plymothian*, 168 U. S. 410.

The record fails to show that the master was free from negligence. It contains affirmative evidence of his negligence. It fails to identify the admitted fault of the ship with any negligence of the subordinate.

The courts below have made no finding that the evidence absolves the master from personal negligence.

Cross-petitioners' petition having been presented on a moot question, the writ of certiorari was improvidently granted, and should be dismissed. *Furness Co.* v. *Insurance Ass'n*, 242 U. S. 430; *Southern Power Co.* v. *Public Service Co.*, 263 U. S. 508.

The master of a ship is legally liable for the negligence of a subordinate to whom he delegates the function of navigating the ship on the high seas. The reason for the rule is stronger under modern conditions.

*Mr. Farnham P. Griffiths*, with whom *Messrs. Edward J. McCutchen* and *Warren Olney, Jr.*, were on the brief, for respondents in No. 146 and cross-petitioners in No. 173.

The rule requiring the privileged vessel on crossing courses to hold course and speed (Article 21) is not unqualified, but is subject to the provisions of the note to Article 21, the general prudential rule (Article 27) and the rule of good seamanship (Article 29), under which, in special circumstances, the privileged vessel must depart from her primary duty in order to avoid immediate danger of collision.

These rules, by their very terms, qualify all the other rules, thus recognizing and enforcing the doctrine of this Court that "every navigator ought to know that rules of navigation are ordained, not to promote collisions, but to save life and property by preventing such disasters." *The Sunnyside,* 91 U. S. 208; *The New York,* 175 U. S. 187; *The America,* 92 U. S. 432.

The lower federal courts have repeatedly called attention to the qualification under special circumstances of the primary rules. *La Lorraine,* 12 F. (2d) 436; *The Admiral Watson,* 266 Fed. 122; *The George S. Tice,* 287 Fed. 127; *The Senator Rice,* 223 Fed. 524; *The Devonian,* 110 Fed. 588; *The Southern,* 224 Fed. 210; *The Jason,* 288 Fed. 57; *The Non Pareille,* 33 Fed. 524; *The Aurania and The Republic,* 29 Fed. 98.

A case of special circumstances arises and the privileged vessel must depart from her primary duty and take affirmative action to avert collision if she receive distinct indication that the giving way vessel is about to fail in her duty. *The Delaware,* 161 U. S. 459; *The New York,* 175 U. S. 182; *The Sunnyside,* 91 U. S. 208.

In a collision, occurring as this did, on the open ocean with perfect visibility and nothing to obstruct navigation, there is a presumption of mutual fault, and the vessel (*Svea*) seeking to be excused, must exonerate herself by the clearest evidence. *The City of New York,* 147 U. S. 72; *The Victory and The Plymothian,* 168 U. S. 410; *The Binghamton,* 271 Fed. 69; *The Tasmania,* 6 Asp. 517.

The courts have repeatedly stated that collisions of this character seem impossible without the concurring negligence of both sets of navigators; that it is hardly possible that the stupidity or obstinacy of a single master can produce them; and that both vessels will be deemed *prima facie* negligent and neither exonerated unless "upon the closest scrutiny of the navigation of each vessel it can be discovered that one of them was free from all culpable

blame." *The Tenadores,* 298 Fed. 740; *The Senator Rice,* 223 Fed. 524; *The Coamo,* 280 Fed. 282; *Insurance Ass'n* v. *Furness Co.,* 215 Fed. 859; *The Comus,* 19 F. (2d) 774; *The West Hartland,* 2 F. (2d) 834; *The Tasmania, supra.* See also David Wright Smith, in The Law Relating to the Rules of the Road at Sea.

Apart from presumption, the *Svea* received distinct indication that the *Newport* was not going to give way. The combination of an apparently deserted bridge, three successively unacknowledged whistle signals, two of them danger blasts, and an unchanging course of a vessel whose unquestionable duty it was to give way, seem to us as powerful a grouping of indications that the burdened vessel was failing in her duty as one could put together. *The Senator Rice,* 223 Fed. 524; *The Tenadores,* 298 Fed. 740; *The New York,* 175 U. S. 187; *The Sunnyside,* 91 U. S. 208; *Nautik* v. *Oostvoorne,* 6 Lloyds List 110; *The Coamo,* 280 Fed. 282; *The Jason,* 288 Fed. 57; *The George S. Tice,* 287 Fed. 127; *The Devonian,* 110 Fed. 588.

Having received distinct indication, the *Svea* was at fault for not acting. *City of Corinth* v. *Tasmania,* 15 A. C. 223; *The Zampa,* 113 Fed. 541; *The Charles A. Campbell,* 142 Fed. 996; *The Queen Elizabeth,* 122 Fed. 406; *The Shawmut,* 261 Fed. 616; *The Montauk,* 180 Fed. 697.

The time for action by the *Svea* was when there was room for her to act effectively so as to avert the threatened collision by her action alone. *The Delaware,* 161 U. S. 459; *The Lepanto,* 21 Fed. 651; *The Aurania,* 29 Fed. 98; *The Normandie,* 43 Fed. 151.

The ruling that the master of a vessel, although not personally negligent, is legally liable for the torts of his subordinates, is in conflict with the established doctrine of *respondeat superior.* *Stone* v. *Cartwright,* 6 Term. Rep. (Durn & East 411); *Brown & Sons Lumber Co.* v.

*Sessler,* 128 Tenn. 665; American Annotated Cases, 1915, c. 103; Mechem's Agency, 2d Ed. § 1643.

The authorities relative to the liability of a shipmaster for the torts of subordinates are in conflict. Those holding him liable, although free from personal fault, are based either upon fallacious reasoning or upon a misconception of previous authorities.

Even if there once were a possible basis for holding a shipmaster liable for the negligent acts of his subordinates, the reason for such harsh doctrine has ceased to exist and the rule should no longer be applied.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Twelve miles off the shore of California, 9:53 A. M., November 29, 1922, sky clear, sea smooth and uninterrupted, the *Newport,* an iron passenger steamer 337 feet long—2,643 tons—drove her prow amidships into the port side of the *Svea,* a wooden lumber steam schooner of 618 tons and 170 feet long. Both vessels were seriously injured. The owner of the *Svea* libeled the *Newport,* her owners and master in the District Court, Southern District of California. They charged that the collision resulted from the sole fault of the *Newport* and her navigators and asked for full damages. A cross libel admitted fault, but claimed that the other vessel contributed, and prayed for application of the half-damage rule.

The trial court concluded that the collision resulted solely from the gross negligence and plain fault of the *Newport,* and granted a decree against her and the master—McKinnon—for all established damages. The Circuit Court of Appeals held there was mutual fault, divided the damages, and definitely declared that under the approved rule the master was responsible for the negli-

gence of subordinates without regard to his personal fault.

Counsel for cross-petitioner McKinnon earnestly maintain that, considering present conditions of navigation, the master, when free from fault, ought not to be held liable for the action of others. But it is unnecessary now to discuss that question.

Here the record fails to disclose that the master met the exacting duties voluntarily assumed. An amazing casualty occurred while he commanded and presumably, at least, he participated in the admitted fault of his ship. Certainly, nothing short of very clear evidence of intelligent care could possibly absolve him.

The day was fine; the horizon ten miles away. The *Newport* was proceeding eastward at nine knots with the *Svea* off her starboard side steaming northward at eight knots. They were approaching each other upon crossing courses and in full view for more than half an hour. Twenty minutes before the collision Captain McKinnon quit the bridge of the *Newport,* leaving the third officer in charge. Of this subordinate he testified: " This young man was just keeping his first watch on ship; he just shipped the day before, and was making his first voyage." When upon the witness stand, the Captain failed to show what, if any, directions he gave, or that he took reasonable precaution to insure proper navigation in circumstances of obvious danger. He gave no excuse, nor did he indicate any necessity for leaving the bridge. It is impossible for us to say that he acted prudently.

The International Rules for Navigation at Sea (Act 1890, ch. 802, 26 Stat. 327, Act 1894, ch. 83, 28 Stat. 82; U. S. C., Title 33, §§ 104, 106, 112, 121, p. 1055) direct—

"Art. 19. When two steam vessels are crossing, so as to involve risk of collision, the vessel which has the other on

her own starboard side shall keep out of the way of the other.

"Art. 21. Where, by any of these rules, one of two vessels is to keep out of the way the other shall keep her course and speed.

"Note.—When, in consequence of thick weather or other causes, such vessel finds herself so close that collision can not be avoided by the action of the giving-away vessel alone, she also shall take such action as will best aid to avert collision.

"Art. 27. In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger.

"Art. 29. Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

The *Newport* kept her course and speed up to the moment of collision and it is admitted that in so doing she was at fault. But her counsel claim that the *Svea* also was at fault in holding her course and speed and that by acting differently she should have avoided the accident. The evidence does not support that view. Consideration must be given to the circumstances as they appeared at the time; not as they are now known. The *Svea* adhered to the fundamental rule. If in the difficult circumstances forced upon him her navigator, whose qualifications are not questioned, exercised his best judgment in not departing therefrom, the burdened vessel must accept the consequences. Having driven him into a perplexing

situation, the *Newport* cannot complain because he failed to make the most judicious choice between the hazards presented.

Without stopping to set out the evidence, it is enough to say that we think there is no clear proof that the *Svea* failed in her duty. She tried in vain by repeated blasts to ascertain the *Newport's* intention. Her master could not possibly know the result of departing from the prescribed rule, and we cannot say that he acted indiscreetly in following it.

Big vessels may not insolently disregard smaller ones; super size gives no right to domineer. The *Newport* was a handy vessel. By porting her helm or reversing her engines two minutes or less before the collision occurred she could have avoided it easily. There was nothing to show that she would not do one of these things until too late for the *Svea's* master to maneuver his vessel into safety.

The applicable doctrine is plainly announced in *The Delaware*, 161 U. S. 459, 469—

" The cases of *The Britannia*, 153 U. S. 130, and *The Northfield*, 154 U. S. 629, must be regarded, however, as settling the law that the preferred steamer will not be held in fault for maintaining her course and speed, so long as it is possible for the other to avoid her by porting, at least in the absence of some *distinct indication* that she is about to fail in her duty. If the master of the preferred steamer were at liberty to speculate upon the possibility, or even of the probability, of the approaching steamer failing to do her duty and keep out of his way; the certainty that the former will hold his course, upon which the latter has a right to rely, and which it is the very object of the rule to insure, would give place to doubts on the part of the master of the obligated steamer as to whether he would do so or not, and produce a timidity and feebleness of

action on the part of both, which would bring about more collisions than it would prevent. *Belden* v. *Chase,* 150 U. S. 674; *The Highgate,* 62 L. T. R. 841; S. C. 6 Asp. Mar. Law Cases, 512."

The decree of the Circuit Court of Appeals in 146 is reversed and that of the District Court is affirmed. In 173 the decree of the Circuit Court of Appeals is affirmed.

*No. 146, reversed.*
*No. 173, affirmed.*