## PACIFIC ATLANTIC S. S. CO. v. UNITED STATES.

### No. 6813.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1933.

Ira S. Lillick, Joseph J. Geary, Chalmers G. Graham, and Lillick, Olson & Graham, all of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

The question presented on this appeal is whether the District Court properly held the merchant vessel, Jefferson Myers, solely liable for a collision with the government dredge, A. Mackenzie, or whether the latter should have been held solely or, if not, then jointly liable.

The following facts, found by the District Court, are not challenged:

The collision occurred shortly after 5 o'clock on the morning of December 20, 1930, on the high seas. During the early morning hours of that day the Mackenzie was dredging the main channel into San Francisco Harbor between buoys 2 and 4. The Myers approached the entrance to the harbor from a southerly direction at full speed. Her navigators saw the dredge well forward of the Myers' beam and on her starboard side, in such a position that the two vessels were on crossing courses at approximately right angles. The red side-light of the Mackenzie showed to the Myers, and the green side-light of the Myers to the Mackenzie. The visibility was good, there was a moderate northwest breeze and a moderate northwest swell. The tide was full, very near slack water. The current was less than a knot per hour. When the Mackenzie was first sighted by the Myers, her dredging lights indicated her occupation. Thereafter her dredging lights were put out

and she directed her course westerly, intending to proceed to sea in order to dump her load. The Myers' navigators failed to observe the maneuvers of the Mackenzie or the extinguishment of her dredging lights. Assuming that the Mackenzie would continue to dredge between the buoys, they attempted to cross ahead of the Mackenzie without stopping or slackening speed. The attempt was unsuccessful and a collision occurred near the center of the main channel, at a point 100 to 150 feet from buoy No. 1. The Myers struck the Mackenzie on her port counter 30 feet from the stern. Both vessels suffered damage.

The District Court held that the applicable rules of navigation required the Myers to keep out of the way of the Mackenzie and that there was no negligence in the latter's navigation; that if there were errors in navigation, they were errors in judgment committed when there was imminent danger of collision, in a situation of peril created by the Myers' failure to observe the rules of navigation applicable to a vessel in her situation.

The applicable rules of navigation are set out in the margin below.[1]

The record is clear as to the sequence of events prior to the collision. The Myers picked up the bar pilot at approximately 4:51 a. m. and proceeded at full speed on the northerly side of the channel entering the bay. At that time the pilot observed the dredging lights of the Mackenzie. He did not again notice the Mackenzie's lights until between 5:05 and 5:06, at which time her mast and port lights were showing. Thereupon the pilot blew a two blast signal, indicating that despite Article 19, he intended to cross the Mackenzie's bow. The Mackenzie responded immediately with one blast and four. At this time the speed of the Myers was between seven and nine knots; that of the Mackenzie between seven and eight.

There is some dispute as to whether the one or four blast signal was given first. This appears to be immaterial and the parties have treated it as such. The four blast was a danger signal, the one indicated that the Mackenzie would insist upon the privilege given to her by article 19.

■ Appellant contends that until the Mackenzie gave this signal and thus, as appellant puts it, indicated her intention to cross ahead of the Myers' bow, the situation was one of special circumstances, governed by article 27, because when the Myers first set her course across the channel the Mackenzie's lights showed that she was not a free navigating vessel but a dredge. This, it is urged, justified the two-blast signal. But as the pilot of the Myers well knew, the Mackenzie frequently changed from a dredge to a free navigating vessel which would cross the channel to dump her load. And in any event, the mere fact that dredging lights showed when she was first sighted did not justify the Myers in assuming that this status would persist. The very least requirement of safe navigation at such close proximity is that a careful and continuous attention be directed to the maneuvers of the other vessel. At approximately 5:03 the Mackenzie, having ceased dredging, put out her dredge light. According to appellant's own view of the case, the changed status of the Mackenzie was not noticed before 5:05½, and the pilot of the Myers admitted that up to that time he had paid no special attention to observe whether or not the dredging lights were put out.

■ Far from revealing special circumstances favoring the Myers, this situation clearly shows that she was at fault in not observing the changed status of the Mackenzie. In these circumstances, the Myers' two-blast signal was clearly improper under article 19.

On the other hand, there was nothing improper in the Mackenzie's crossing this signal. She was merely insisting upon the privilege conferred upon her by article 19.

The distance between the two vessels at the time the Mackenzie gave her one and four blast signal has been variously estimated at between 1,200 feet and three-quarters of a mile. From the testimony of witnesses in a position to observe most accurately it appears that the actual distance was nearer the former figure; in any event the captain of the Myers

---

[1] Art. 19. When two steam vessels are crossing, so as to involve risks of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other. 26 Stat. 327, 33 U. S. Code, § 104 (33 USCA § 104).

Art. 21. Where, by any of these rules, one of two vessels is to keep out of the way the other shall keep her course and speed. 28 Stat. 83, 33 U. S. Code, § 106 (33 USCA § 106).

Art. 22. Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other. 26 Stat. 327, 33 U. S. Code, § 107 (33 USCA § 107).

Art. 23. Every steam vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse. 26 Stat. 327, 33 U. S. Code, § 108 (33 USCA §-108).

Art. 27. In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger. 26 Stat. 327, 33 U. S. Code, § 112 (33 USCA § 112).

said to the pilot at that time: "We are getting in pretty close quarters."

According to the testimony of Mathson, the officer then in charge of the Mackenzie, a minute or more elapsed without any response on the part of the Myers to the one and four blast signal. Thereupon Mathson repeated the signal. The Myers' witnesses have testified that only one such signal was heard. There is little doubt, however, that the second set of signals was given as Mathson's testimony is positively corroborated by other members of the Mackenzie crew. The failure of the Myers to hear the signal may have been, as appellant sugests, because their own second signal was given at just about this time, or as appellee suggests, because the excitement on the Myers was such that it was not noticed.

At the very time that Mathson gave his second signal, he stopped the Mackenzie's engine. Half a second later, according to his testimony, the Myers blew four blasts, danger, and three blasts, full speed astern on engines, and the Mackenzie responded with three, indicating that she too was reversing. Approximately three minutes later, the Myers struck the Mackenzie, but not until the latter's captain, awakened by the signals, had rushed on deck and ordered full speed ahead in order to avoid being struck amidship.

█ Appellant urges that the Mackenzie, having crossed the Myers' signal, was under an absolute duty thereafter by virtue of Article 21 to keep her course and speed; that her failure to do so without warning puts her solely at fault, inasmuch as but for this no collision would have occurred.

Appellee concedes that the "probabilities are certainly strong that without a slackening of * * * speed, the collision would have been avoided." And looking backward now this is more than probable. The record leads to the inevitable conclusion that the Mackenzie would have cleared the Myers by nearly seventy feet.

But analysis of the situation demonstrates that the blame should not therefore be shifted from the Myers to the Mackenzie. When the Mackenzie blew her first one and four blast signal she was then plainly under a duty to maintain her course and speed. But the Myers was under a duty to answer the Mackenzie's signal promptly. See The New York, 175 U. S. 187, 206, 20 S. Ct. 67, 44 L. Ed. 126 (1899). This she failed to do during the following minute or more. The wheel of the Myers was put hard to port, but the vessel was slow to respond and the officer in charge of the Mackenzie observed no change in the Myers' course or speed which might have indicated that the latter heard and was acting on his signal. In fact the Myers shortly before the Mackenzie gave the second danger signal appeared to be going ahead.

The original fault was that of the Myers in giving the two-blast signal; this was followed by her failure for a minute or more to respond to the signal of the privileged vessel. Meanwhile the ships were drawing nearer, the Myers was gaining on the Mackenzie and the situation was becoming more and more dangerous. The failure of the Myers to respond to the Mackenzie's signal created a situation of special circumstances under article 27 which relieved the Mackenzie of its otherwise absolute duty under article 21. Cf. The Queen Elizabeth, 122 F. 406 (C. C. A. 2d, 1903). Mathson's navigation of the Mackenzie thereafter involved at worst, as the District Court held, error in judgment. At the time the Myers' captain stated that the vessels were "in close quarters," they were approaching each other on courses approximately at right angles, each at the rate of about 700 to 900 feet per minute. When the Mackenzie's engines were stopped this speed had not been slackened appreciably. In such a situation the safe passage offered by a possible clearance of seventy feet could hardly have been reasonably apparent, especially in view of the fact that, although visibility was good, it was not yet daylight when the collision occurred. In the language of the Supreme Court in a somewhat analogous case, the Myers having driven the Mackenzie's navigator "into a perplexing situation * * * cannot complain because he failed to make the most judicious choice between the hazards presented." Wilson v. Pacific Mail S. S. Co., 276 U. S. 454, 461, 462, 48 S. Ct. 369, 370, 72 L. Ed. 651 (1928).

The decision of this Court in The West Hartland, 2 F. (2d) 834, 836 (1924), relied on by appellant is inapplicable here. A quotation from the opinion indicates the dissimilarity in facts; it was there stated: "For some considerable time before the collision, the master of the West Hartland [privileged vessel] was in doubt as to the course the Governor intended to pursue, and under such circumstances, it was his plain duty to solve that doubt in favor of safety by giving a danger signal or taking timely steps to avoid a collision before plunging his vessel into a position where a collision would be the natural, if not the necessary, consequence."

In the present case, the Mackenzie's nav-

igator did give a timely danger signal after the Myers' original fault; and thereafter it was the failure of the Myers to respond which caused the situation of imminent peril.

The decree is affirmed.