**THE VIRGINIA AND JOAN.**
No. 604.

District Court, D. Massachusetts.
Jan. 9, 1936.

G. Philip Wardner, of Boston, Mass., for libelant.

Sylvester F. Whalen and A. F. Christiansen, both of Boston, Mass., for claimant.

McLELLAN, District Judge.

This libel was brought by Paul Giacalone, of Gloucester, as owner and master of the fishing vessel Josie, in behalf of himself and the members of his crew, to recover for the loss of the Josie with all her equipment and for the loss of personal effects of the crew.

The collision which gave rise to this libel occurred some time between 10:30 and 11 on the morning of September 20, 1934, about 10 miles northeast of Thatcher's Island. The Josie at the time was engaged in dragging. A dragger is rigged with ropes from each side of the vessel running up to a block on the mast about 16 or 17 feet high, in the present case, and thence running out over the stern of the boat, entering the water some 5 or 6 feet behind the stern. These ropes are attached to a big net, extending back of the boat as far as 350 fathoms. The rig was of such a nature that it should have been obvious that the Josie was at the time engaged in dragging. The Virginia and Joan had been engaged in tending her gill nets, which were located off the Isle of Shoals, some 20 miles from Thatcher's Island. Gill nets rest on the

bottom of the ocean and must be tended every day. The Virginia and Joan had gone out early in the morning, and was returning to Gloucester at the time of the collision.

There was considerable conflict as to the weather at the time of the collision. The crew of the Virginia and Joan all testified that there was a very thick fog, with not more than one or two boat lengths' visibility at the most. The crew of the Josie testified that there was only a light fog at the time and that there was visibility of at least half a mile. The testimony of the crew of the Virginia and Joan that there was visibility of not more than a few feet finds little support in the rest of the evidence. The records of the lighthouse on the Isle of Shoals show some fog over the middle of the day, but do not disclose its thickness. The lighthouse records at Thatcher's Island show there was not enough fog there to warrant the use of their fog signal at any time during the day. Four other witnesses testified that they were fishing off the coast in the general vicinity of Gloucester at the time of the collision, and that, while there was some fog, there was considerable visibility at all times. None of these fishermen were near enough to the scene of the collision, however, to actually see the boats involved. I find there was some fog on the day of the collision, but that it was still possible to see a vessel the size of the Josie at least a quarter of a mile away, so that there was plenty of time for either boat to change her course.

The Josie, being encumbered by her drag, was proceeding at a speed of not more than 1½ knots before and at the time of the collision. The Virginia and Joan, which was running free, was, according to the testimony of her own crew, going at a speed of about 5½ knots at the time. The Josie at no time before the collision changed her speed or course. The Virginia and Joan made no change until just before the accident, when its course was changed and the engine put in reverse. It was then too late to avoid the collision. The course of the Josie at the time was northwest. The course of the Virginia and Joan was southwest a half south.

It is the libelee's contention that no fog signals were blown by the Josie. The only evidence in support of their contention was that no such signals were heard aboard the Virginia and Joan and that the whistle appeared bent after the accident. On the other hand, the engineer and the master of the Josie both testified that fog signals were blown on the whistle at regular intervals until just before the collision, that at that time an alarm signal of seven or eight blasts was blown, and that the whistle rope then broke, after which signals were given on the hand fog horn. They also testified as to the condition of the whistle at the time of the collision. On conflicting evidence, I find that there was no failure to give the required fog signals, and no fault as to the condition of the whistle.

With a visibility of a quarter of a mile and a speed of 5½ knots, the Virginia and Joan must have been within sight of the point of collision for two or three minutes before it occurred. The Josie was approaching at a speed of not exceeding 1½ knots on a course which apparently was only slightly more than at right angles to the course of the Virginia and Joan. Accordingly, the Josie and the Virginia and Joan were within sight of each other more than two minutes. There was plenty of time for the vessel having the duty under the International Rules, which govern in this case, to get out of the way, to do whatever was necessary under that duty to avoid the other vessel. It becomes necessary, therefore, to determine which vessel had the right of way.

If both vessels had been running free, the Josie would have had the duty of getting out of the way, since she had the Virginia and Joan on her starboard. U.S.C.A. title 33, § 104. But, in the present case, the Josie was encumbered by the net she had in tow. In that case a different rule is provided. Article 26 of the International Rules (U.S.C.A., title 33, § 111) reads: "Sailing vessels under way shall keep out of the way of sailing vessels or boats fishing with nets, or lines, or trawls. This rule shall not give to any vessel or boat engaged in fishing the right of obstructing a fairway used by vessels other than fishing vessels or boats."

This article covers the present case, unless it can be argued that the rule applies only to sailing vessels and not to power boats like the Virginia and Joan.

The cases indicate the rule's applicability to power vessels. The New Moon (D.C.) 55 F.(2d) 928; The Albatross (C.C.A.) 20 F.(2d) 17; The Marshall O. Wells (C.C.A.) 178 F. 918; The Grovehurst, L.R.(1910) Probate Division 316.

The Virginia and Joan was bound to keep out of the way of the Josie, and was solely at fault, unless the accident was unavoidable, or some fault on the part of the Josie contributed to the accident. The defense set up by the Virginia and Joan to show unavoidable accident was that the cause of the collision was thick fog. On the facts as found, there was no such fog as would make it impossible for the Virginia and Joan to keep out of the way as required by the rules. Moreover, if the fog were as thick as the crew of the Virginia and Joan testified, the vessel would still have been at fault. Article 16, U.S.C.A., title 33, § 92, provides:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions.

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

▮ This rule has been construed often by the courts, both in this country and in England. A moderate speed means a speed slow enough to enable the vessel to stop upon sighting an approaching ship, supposing that the latter also is going at a moderate speed, except that the vessel may maintain sufficient speed to enable her to remain under command. The Nacoochee, 137 U.S. 330, 11 S.Ct. 122, 34 L.Ed. 687; The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053; The Chattahooche, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801; The Sagamore (C.C.A.1st 1917) 247 F. 743. A speed of 5½ knots is clearly greater than necessary for steerageway in a vessel the size of the Virginia and Joan. Such a speed was held to be too great in a thick fog on the Grand Banks for an ocean liner, in the case of The Sagamore, supra. Had the fog been as heavy as the crew of the Virginia and Joan testified, that fact would not have constituted a defense.

The libelee urges that the Josie was at fault in not giving the required fog signals. The only evidence in support of their contention, however, is that such signals were not heard on the Virginia and Joan, and that the whistle was bent after the collision. The crew of the Josie testified that the whistle was in good condition and was blown at the required intervals until the Virginia and Joan was right on top of them. The evidence as to the broken whistle was given by those who did not see it until after the accident. On conflicting evidence, I have found that there was no failure on the part of the Josie to give the required fog signals.

▮ The libelee also contends that the Josie was at fault for not keeping a proper lookout. According to the testimony of the Josie's crew, the master was at the wheel at the time of the collision and the rest of the crew were out on deck washing fish. The men on deck washing fish probably are not within the technical requirements for a lookout, but this is of no importance. The captain at the wheel and the crew saw the Virginia and Joan at least a quarter of a mile away. The Josie was aware of the approach of the other boat, and the want of a lookout was not, and under the circumstances here presented could not have been, a contributing cause of the collision.

▮ The respondent further says the Josie was at fault in that, if aware of the approach of the other boat, she should have stopped. The Josie was not at fault in this respect.

U.S.C.A., title 33, provides:

Article 21, § 106. "Where, by any of these rules, one of two vessels is to keep out of the way the other shall keep her course and speed.

"NOTE.—When, in consequence of thick weather or other causes, such vessel finds herself so close that collision can not be avoided by the action of the giving-way vessel alone, she also shall take such action as will best aid to avert collision."

Article 27, § 112. "In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger."

Article 29, § 121. "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."

Under these rules, failure to change one's course involves no fault unless there is some indication that the obligated vessel is going to fail in her duty. It is ordinarily the duty of the preferred vessel to keep her course so that the other can tell what she is about to do. In The Delaware, 161 U.S. 459, at page 469, 16 S.Ct. 516, 521, 40 L.Ed. 77, the court said: "The cases of The Britannia v. Cleugh (The Britannia), 153 U.S. 130, 14 S.Ct. 795 [38 L.Ed. 660], and Hutchinson R. Co. v. The Northfield, 154 U.S. 629, Appx., 14 S.Ct. 1184 [24 L.Ed. 680], must be regarded, however, as settling the law that the preferred steamer will not be held in fault for maintaining her course and speed, so long as it is possible for the other to avoid her by porting; at least in the absence of some distinct indication that she is about to fail in her duty. If the master of the preferred steamer were at liberty to speculate upon the possibility, or even the probability, of the approaching steamer failing to do her duty and keep out of his way, the certainty that the former will hold his course, upon which the latter has a right to rely, and which it is the very object of the rule to insure, would give place to doubts on the part of the master of the obligated steamer as to whether he would do so or not, and produce a timidity and feebleness of action on the part of both, which would bring about more collisions than it would prevent. Belden v. Chase, 150 U.S. 674, 14 S.Ct. 264 [37 L.Ed. 1218]; The Highgate, 62 L.T. 841, 6 Asp.Mar.L.Cas. 512."

This language was quoted with approval in Wilson v. Pacific Mail S. S. Co., 276 U.S. 454, 48 S.Ct. 369, 72 L.Ed. 651.

The present case falls within the principle of those cases. Because of the relatively slow speed of the Josie at the time and because of the small size of the two vessels, the Josie had no reason before the collision was inevitable to believe that the Virginia and Joan would not do her duty and keep out of the way. When the contrary appeared, it was too late to avoid the collision. Moreover, where a dangerous situation results from one's fault, he may not complain that, had his adversary's conduct risen above the standard of care ordinarily to be expected under the circumstances, no harm would have happened. Wilson v. Pacific Mail S. S. Co., supra; The Blue Jacket, 144 U.S. 371, 12 S.Ct. 711, 36 L.Ed. 469; The Maggie J. Smith, 123 U.S. 349, 8 S.Ct. 159, 31 L.Ed. 175.

I conclude that the Virginia and Joan was solely at fault and liable.